2004 UT 11

**DICK SIMON TRUCKING, INC.,**
**Plaintiff and Appellant,**

v.

**UTAH STATE TAX COMMISSION,**
**Defendant and Appellee.**

No. 20010560.

Supreme Court of Utah.

Jan. 30, 2004.

Mark K. Buchi, Steven P. Young, Salt Lake City, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Clark L. Snelson, Michelle Bush, Asst. Att'ys Gen., Salt Lake City, for defendant.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 Plaintiff Dick Simon Trucking, Inc. (Dick Simon) purchased satellite tracking units and attached them to new trucks that it uses in its trucking business. Following an audit, the Utah State Tax Commission (the Commission) concluded that the purchases were purchases of tangible personal property, and assessed sales tax accordingly. Dick Simon petitioned the Commission for reconsideration, arguing that the satellite units are parts of vehicles that Dick Simon partially self-manufactures, and that Utah Code section 59–12–104(36) (2000 & Supp.2001) (the Authorized Carrier Exemption)[1] exempts the units from taxation. The Authorized Carrier Exemption provides that "sales or leases of vehicles to, or use of vehicles by, an authorized carrier" are exempt from sales and use taxes. Utah Code Ann. § 59–12–104(36). The Commission found the Authorized Carrier Exemption inapplicable, and upheld the tax assessment. Dick Simon petitioned the district court for review pursuant to Utah Code Ann. section 59–1–601 (2000).

¶ 2 Dick Simon now appeals the district court's grant of summary judgment for the Commission. It argues that when Dick Simon installs a satellite unit onto a truck, the unit is integrated into the aggregation of parts that constitute a "vehicle" for purposes of the Authorized Carrier Exemption. The question before us is whether the satellite tracking units qualify for the Authorized Carrier Exemption by virtue of the fact that Dick Simon installs them and makes them part of its vehicles before use.

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 3 In reviewing a trial court's grant of summary judgment, we give no deference to its conclusions of law. *State v. Tooele County*, 2002 UT 8, ¶ 8, 44 P.3d 680. Instead, we review the grant of summary judgment for correctness. *Id.* "Likewise, a district court's interpretation of a statutory provision is a question of law that we review for correctness." *Id.* When we review a grant of summary judgment, "we review the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Houghton v. Dep't of Health*, 2002 UT 101, ¶ 2, 57 P.3d 1067 (internal quotation omitted).

### II. APPLICABILITY OF THE AUTHORIZED CARRIER EXEMPTION

¶ 4 Utah imposes sales tax upon "retail sales of tangible personal property made within the state." Utah Code Ann. § 59–12–103(1)(a) (2000 & Supp.2003). It is undisputed that the satellite tracking units at issue here constitute "tangible personal property." Sales of the units are therefore subject to sales tax, unless an exemption applies. *Mark O. Haroldsen, Inc. v. State Tax Comm'n*, 805 P.2d 176, 179 (Utah 1990).

¶ 5 Any doubt about the proper application of a sales tax exemption must be resolved against Dick Simon. "While courts generally construe taxing statutes favorably to the taxpayer and strictly against the tax-

---

1. The exemption is currently codified at Utah Code Ann. section 59–12–104(35) (Supp.2003). At all times pertinent to this litigation, however, it existed at section 59–12–104(36). Utah Code Ann. § 59–12–104(36) (2000 & Supp.2001). This opinion therefore cites the Authorized Carrier Exemption as it was codified at Utah Code Ann. section 59–12–104(36) (2000 & Supp.2001).

ing authority, the reverse is true of exemptions." *SF Phosphates Ltd. v. Auditing Div., Utah State Tax Comm'n,* 972 P.2d 384, 386 (Utah 1998) (internal quotations omitted); *see also Hales Sand & Gravel, Inc. v. Audit Div. of the State Tax Comm'n,* 842 P.2d 887, 890–91 (Utah 1992) ("Although we generally construe taxing statutes in favor of the taxpayer and against the taxing authority, we construe statutes providing tax exemptions strictly against the taxpayer.").

¶ 6 Both Dick Simon and the Commission base their arguments on the plain language of the Authorized Carrier Exemption. The Commission argues that the language indicates that the exemption applies only to "vehicles," and that because the satellite units are neither "vehicles" nor, when the sale transaction occurs, parts of "vehicles," they do not qualify for the exemption. Dick Simon argues that the language applies to all the parts of a vehicle that are installed before the vehicle is placed in service for the first time.

¶ 7 Dick Simon advances several additional arguments for treating the satellite units as exempt vehicle parts even though it purchases them separately from the trucks themselves. Specifically, it argues that (1) the Wyoming case of *Burlington Northern Railroad Co. v. Wyoming State Board of Equalization,* 820 P.2d 993 (Wyo.1991) supports its position; (2) the Utah legislature intended the exemption to apply in cases such as this; (3) language in section 59–12–104(41) of the Utah Code (the tax exemption for passenger tramways) supports Dick Simon's position; (4) facts occurring after a transaction are relevant to determine the applicability of a sales and use tax exemption; (5) Dick Simon would have presented evidence at trial that the satellite units are simply one part of a tax exempt vehicle, and therefore the trial court should not have granted summary judgment; and (6) a ruling against Dick Simon will create bad tax policy.

### A. Statutory Interpretation

¶ 8 The Authorized Carrier Exemption applies to "sales or leases of vehicles to, or use of vehicles by, an authorized carrier." Utah Code Ann. § 59–12–104(36). There is no dispute that the satellite units were sold to Dick Simon, as the exemption requires. Likewise, no dispute exists about whether Dick Simon is an "authorized carrier." The issue is whether the satellite units qualify as "vehicles" by virtue of their installation on Dick Simon's trucks before the trucks' first use.

■ ¶ 9 The legislature has defined the term "vehicle" for purposes of the Sales and Use Tax Act generally, and for the Authorized Carrier Exemption specifically. "Vehicle" means, in pertinent part, "any vehicle, as defined in section 41–1a–102 … that is required to be titled, registered, or both." Utah Code Ann. § 59–12–102(31) (2000).[2] Section 41–1a–102 of the Utah Code further defines "vehicle" as "a motor vehicle, trailer, semitrailer, off-highway vehicle, manufactured home, and mobile home." Utah Code Ann. § 41–1a–102(66) (1998 & Supp.2003). The same section defines a "motor vehicle" specifically as "a self-propelled vehicle intended primarily for use and operation on highways." *Id.* § 41–1a–102(33)(a) (1998 & Supp.2003).

¶ 10 The Commission points out that the terms of the Authorized Carrier Exemption indicate that the exemption applies only to certain purchases of "vehicles," and that, while the satellite tracking units may well be important vehicle parts, they do not qualify as "vehicles" in and of themselves. The legislature could have specified that the exemption would also apply to vehicle parts, as it did with the exemption for aircraft "parts and equipment." *See Id.* § 59–12–104(5) (2000 & Supp.2003). The Authorized Carrier Exemption, however, does not mention vehicle parts. *See Id.* Utah Code Ann. § 59–12–104(36).

¶ 11 The Commission also points out that the "[s]ales tax in Utah is a transaction-oriented tax." *Matrix Funding Corp. v. Utah State Tax Comm'n,* 2002 UT 85, ¶ 15, 52 P.3d 1282. Thus, according to the Commission, we must look only at what constitutes the vehicle when the sale transaction

---

2. This provision is now codified at section 59–12–102(75) of the Utah Code (Supp.2003), with one substantively insignificant change in punctuation.

occurs. It is improper, the Commission argues, to inquire into events taking place after the transaction to determine whether the exemption applies.

¶ 12 Dick Simon concedes that the satellite units obviously are not themselves "vehicles," and also agrees that the sales tax is transaction-oriented. Dick Simon argues, however, that it is sometimes necessary to consider events taking place after the actual purchase as part of the transaction. It argues that the exemption applies to "purchases of all parts of a vehicle installed prior to the vehicle being placed in service." To support its argument, Dick Simon points out that the term "vehicle" includes "specially constructed vehicles." Dick Simon reasons that because the definition of "vehicle" for purposes of the Authorized Carrier Exemption encompasses "specially constructed vehicles," "[t]he Legislature has thus declared that under Utah law, a vehicle is nothing more than a cumulation of parts." Therefore, Dick Simon urges, the satellite units are exempt because they become part of Dick Simon's exempt vehicles before Dick Simon places the vehicles in service.

¶ 13 According to the Utah Code, "specially constructed vehicles" are vehicles that (1) must be registered in Utah, (2) are "not originally constructed under a distinctive name, make, model, or type by a generally recognized manufacturer of vehicles," and (3) are "not materially altered from [their] original construction." Utah Code Ann. § 41–1a–102(58) (1998 & Supp.2003). While it is true that the Authorized Carrier Exemption does apply to specially constructed vehicles, Dick Simon's assertion that the legislature has therefore declared that a vehicle is "nothing more than a cumulation of parts" is a non sequitur. The fact that the Authorized Carrier Exemption encompasses specially constructed vehicles simply means that specially constructed vehicles are, like other vehicles, exempt from sales and use tax when they are sold or leased to authorized carriers. The satellite units are not "specially constructed vehicles" any more than they are ordinary "vehicles."

¶ 14 Dick Simon's argument suggests that the trucks it purchases are not yet "vehicles,"

and do not become "vehicles" until Dick Simon does some additional work to ready them for service. To support this position, Dick Simon cites the affidavit of its Chief Financial Officer and General Manager Alban Lang, and asserts:

> When Simon receives the partially-completed trucks from the manufacturer, the trucks are not legally or practically ready to be placed into service. In order to make them ready, Simon does a thorough maintenance check of the trucks, registers and licenses the trucks, cures any manufacturing defects in the trucks pursuant to an agency agreement with the manufacturer, installs the satellite units, and adds load-locks, trailers, company identification and detailing, government required markings, and government required safety equipment such as fire extinguishers, mud flaps, and reflective triangles. Simon also installs the tires because the manufacturers generally ship the trucks with the tires detached.

Even assuming that Dick Simon must perform these additional tasks before placing the trucks in service, however, Dick Simon need not perform additional work for the trucks to qualify as "vehicles" for purposes of the Authorized Carrier Exemption. This is because the pertinent statutory provisions contain no requirement that a truck must be legally and practically ready to be placed in service before constituting a "vehicle." *See* Utah Code Ann. § 59–12–104(36); *Id.* § 41–1a–102(33), (66). Rather, at the time of the truck purchase transaction, the trucks already meet the definition of "motor vehicle." Utah Code Ann. § 41–1a–102(33)(a). The trucks are essentially completed "vehicles" at the time of their purchase.

¶ 15 Dick Simon claims that a ruling against it is tantamount to deciding that "the term 'vehicle' does not include the parts used to build the vehicle." In actuality, we are ruling that a "vehicle" is comprised of all its parts at the time of the purchase transaction. Once the transaction is completed, however, additional parts cannot be exempted from taxation by adding them on to the already-built vehicle.

¶ 16 In sum, Dick Simon's approach incorrectly conflates its purchase of trucks—trucks that are already "vehicles" at the time of the transaction—with its post-purchase addition of the satellite units to the trucks. We hold that the only way truck parts can constitute a "vehicle" for purposes of the Authorized Carrier Exemption is for the parts to be integrated into the vehicle at the time of its purchase. Although Dick Simon emphasizes that it must perform some work on the trucks before it can place them in service, we are satisfied that the trucks are already "vehicles" when Dick Simon purchases them. The transaction on which *Matrix Funding* instructs us to focus does not include Dick Simon's separate purchase of additional parts.

### B.  Related Arguments

 ¶ 17 As noted above, Dick Simon makes several additional arguments in support of its interpretation of the Authorized Carrier Exemption. It contends that we should construe the exemption based on reasoning in the concurring opinion of a Wyoming case, that we should analogize the Authorized Carrier Exemption to different sales and use tax exemptions, that the satellite units are critical parts of the trucks that must be attached before commercial operation, and that public policy and legislative intent support Dick Simon's position. We have considered each of these arguments, but find them unpersuasive in light of the plain language of the Authorized Carrier Exemption. In addition, none of the different tax exemptions Dick Simon has cited are analogous to the Authorized Carrier Exemption. Finally, because we find the exemption inapplicable based on its plain language, we need not inquire into legislative history or weigh Dick Simon's public policy arguments. "When interpreting statutes, we determine the statute's meaning by first looking to the statute's plain language, and give effect to the plain language unless the language is ambiguous." *State v. Schofield*, 2002 UT 132, ¶ 8, 63 P.3d 667 (internal quotations and citations omitted).

### CONCLUSION

¶ 18 The plain language of the Authorized Carrier Exemption establishes that the exemption does not apply to Dick Simon's purchases of satellite tracking units. The satellite tracking unit purchase transactions occur separate from and subsequent to the vehicle purchase transactions. Adding the units to the vehicles after the vehicle purchase transaction has been completed does not make the units part of the vehicle for purposes of the Authorized Carrier Exemption. We therefore affirm the district court's grant of summary judgment for the Utah State Tax Commission.

¶ 19 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.