2004 UT 51

LKL ASSOCIATES, INC., Plaintiff,

v.

Ann M. FARLEY; Janet Heidt; James E. Caruso; William Jackson; Jillian Anderson; Guy G. Berryessa; Flagstar Bank, FSB; Approved Financial Corp.; Wells Fargo Home Mortgage, Inc.; Advance Mortgage Corporation; Superior Insulation Co.; Western Wholesale Flooring; Anderson Lumber Company; Superior Plumbing and Heating, Inc.; JM Mechanical/Service Experts; Aqua Balance, Inc.; Rob Chlarson; Dennis Skiby; and John Does 1 through 20, Defendants and Appellee.

Superior Insulation Co., Inc., Third–Party Plaintiff,

v.

CraCar Construction Company; Peter Van Veldhuizen; and Charlene Van Veldhuizen, Third–Party Defendants and Appellant,

v.

Curt G. Hood; Jennifer C. Smith; Kimcee Mcanally; M.S. Thirty, LLC; Richard Silliman; Shelly A. Silliman; Stephen J. Johanson; Janyce L. Johanson; James Welzien; Robert G. Stanley; John F. Guertin; Harry R. Bruestle; Susan Bruestle; James G. Sumner; Ann E. Sumner; Charles H. Seebock and Joy C. Seebock, Trustees of the Seebock Family Trust; Carey C. Logsdon; Craig R. Hellmers; Bear Hollow Village, LLC; Darrel E. White; Beth Ellen White;

Douglas Robinson; Constance Robinson; Howard E. Butt; Patricia M. Butt; Ted Yarborough; John Scott Lewis; Andrew Manilla; Laurence Franciose; and John Does 21 through 240, Third–Party Defendants and Appellee.

No. 20020626.

Supreme Court of Utah.

June 22, 2004.

Bryan H. Booth, Clark B. Fetzer, Salt Lake City, for CraCar Construction Company.

Ronald G. Russell, James Ahlstrom, Salt Lake City, for Ann M. Farley and Curt G. Hood.

WILKINS, Associate Chief Justice:

¶ 1 CraCar Construction Company ("CraCar"), a third-party defendant, appeals the trial court's grant of summary judgment to a number of condominium owners who were defendants in an action brought by LKL Associates, Inc. ("LKL") to foreclose mechanic's liens against the individual condominiums. CraCar argues that the trial court incorrectly applied Utah Code sections 38–11–102(20) and –107(1) (2001), which prohibit the filing of certain mechanic's liens on "residences," as defined therein. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 The defendant condominium owners purchased individual units in a ten-unit condominium building that was part of an even larger development. The developer of the condominium project was the now-insolvent Bear Hollow Village, LLC ("Bear Hollow"), which hired CraCar to be the general contractor on the project. In turn, CraCar hired many subcontractors in its construction of the development. Bear Hollow sold some of the condominium units without paying CraCar. CraCar and its subcontractors then filed mechanic's liens against the condominiums, with some of the subcontractors later initiating actions to foreclose their liens. CraCar was named as a third-party defendant by two of those subcontractors.

¶ 3 The owners of individual condominium units filed motions for summary judgment on grounds that the mechanic's liens filed against their property were improper under portions of the Residence Lien Restriction

and Lien Recovery Fund Act ("Lien Restriction Act" or the "Act"), Utah Code Ann. §§ 38–11–102(20) and –107(1) (2001), because the condominium units constitute "residences." Under certain circumstances, the Act provides that no mechanic's lien may be maintained against a "residence." *Id.* § 38–11–107(1). For purposes of applying the protection afforded by the Act, "residence" is given a specific, narrow definition. " 'Residence' means an improvement to real property used or occupied, to be used or occupied as, or in conjunction with, a primary or secondary detached single-family dwelling or multifamily dwelling up to two units." *Id.* § 38–11–102(20). CraCar and its subcontractors opposed the motions because they believed the units did not qualify as "residences" under the Act.

¶ 4 The trial court granted the unit owners' motions for summary judgment, reasoning that the units were "residences" under the Lien Restriction Act because of the character of their ownership. The trial court concluded that this determination was compelled by various provisions of the Condominium Ownership Act and the principle of statutory construction that mandates the avoidance of unconstitutional interpretations. CraCar appeals, renewing the arguments it made below.

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 5 We review the trial court's grant of summary judgment for correctness. *Prince, Yeates & Geldzahler v. Young,* 2004 UT 26, ¶ 10, 94 P.3d 179. The facts are undisputed and CraCar's appeal hinges on questions of statutory interpretation, which are also properly reviewed for correctness. *Bearden v. Croft,* 2001 UT 76, ¶ 5, 31 P.3d 537.

### II. LIEN RESTRICTION ACT

¶ 6 An owner of a residence, as defined by the Lien Restriction Act, is protected from mechanic's liens filed by a person or entity with whom the owner did not directly contract. Utah Code Ann. § 38–11–107(1) (2001). A "[r]esidence" is "an improvement to real property used or occupied, to be used or occupied as, or in conjunction with, a primary or secondary detached single-family dwelling or multifamily dwelling up to two units." *Id.* § 38–11–102(20). The trial court believed that this definition of "residence" was broad enough to encompass the condominium units on which the liens in this case were filed. We disagree. A single unit of a ten-unit building is neither a *detached* single-family dwelling, nor a multifamily dwelling of *two or fewer* units.

¶ 7 Statutes are to be construed according to their plain language. *Dick Simon Trucking, Inc. v. Utah State Tax Comm'n,* 2004 UT 11, ¶ 17, 84 P.3d 1197. This court also interprets statutes to give meaning to all parts, and avoids rendering portions of the statute superfluous. *Labelle v. McKay Dee Hosp. Ctr.,* 2004 UT 15, ¶ 16, 89 P.3d 113. Applying these rules to the statutory language quoted above, it is apparent that no reasonable reading of the language in question supports the trial court's holding.

¶ 8 Section 38–11–102(20) clearly defines "residences" as only detached single-family dwellings or multifamily dwellings containing up to, but not more than, two units. The condominium owners argue that the statute does not necessarily identify specific properties for protection, but, rather, suggests that a certain character of ownership is to be protected. Given that they own only single units within the development, they argue that they are entitled to the protections of section 38–11–107(1). While their argument might represent good policy, the statutory language clearly limits the Act's protections to either the typical single-family home, or a duplex.[1] In order for this court to accept the owners' position and affirm the trial court, we would be forced to ignore a clear statutory mandate and render the definition chosen by the legislature meaningless. Accordingly, we hold that the condominium units in this case, located in a building containing ten units, do not qualify for the protections of the Lien Restriction Act.

---

1. We use "duplex" to describe so-called "twin-  homes" and other variations of a duplex.

¶ 9 The owners argue that their construction of the Act is compelled by the maxim that a court should avoid a statutory interpretation that may be unconstitutional. *See, e.g., American Fork City v. Pena–Flores,* 2002 UT 131, ¶ 9, 63 P.3d 675 (noting that where more than one statutory interpretation is plausible, a court should avoid potentially unconstitutional interpretations). However, the owners ignore the fact that this rule is only applied if the different interpretations of the statute are plausible. Their proposed interpretation of section 38–11–102(20) is completely implausible. Two simply does not mean ten, and detached does not mean attached. The owners own single-family dwellings *attached* to *nine* other units. Therefore, we need not apply this rule of construction in this case.[2]

## III. CONDOMINIUM OWNERSHIP ACT

■ ¶ 10 The Condominium Ownership Act, Utah Code Ann. §§ 57–8–1 to –36 (2000 & Supp.2003), contains provisions applicable to condominium developments, which apply notwithstanding a conflicting provision of law. *Id.* § 57–8–35(1). Therefore, if any part of the Condominium Ownership Act conflicts with the above interpretation of the Lien Restriction Act, we must apply the Condominium Ownership Act. The trial court concluded that section 57–8–19 of the Condominium Ownership Act, which provides for the creation of liens on condominium units, and section 57–8–27, which governs the taxation of units, required that the units in this case be treated as single-family dwellings under the Lien Restriction Act. However, the cited sections compel no such result.

¶ 11 Section 57–8–19 comes nearest to providing the protection the owners seek, but it stops short. It allows liens or other encumbrances to be filed against condominium units "in the same manner and under the same conditions in every respect as liens or encumbrances may arise or be created upon or against any other separate parcel of real property subject to individual ownership."

*Id.* § 57–8–19(1). Read in isolation, this section could be viewed as affording the owners the protection they seek. However, when the remaining portion of the section is read, it is clear that section 57–8–19 does not override the definition of "residence" in the Lien Restriction Act, but merely recognizes and resolves one of the unique problems of condominium ownership.

¶ 12 Typically, condominium owners own an individual unit and an undivided fractional interest in common areas. The existence of other units and common areas might, without clarification, allow the filing of liens against an entire project for work done on individual units and common areas, thus jeopardizing innocent owners' interests. Section 57–8–19 addresses this problem by declaring that individual units are to be treated separately for lien purposes. Thus, one property owner is protected from the other owners' non-payment. The very same subsection the owners cite also contains a provision stating that, under certain circumstances, each owner has consented to work or services performed in common areas. *Id.* Read as a whole, section 57–8–19 merely clarifies the procedure for filing liens against condominium units, which have unique characteristics. It does not alter the definition of "residence" found in the Lien Restriction Act.

■ ¶ 13 Likewise, section 57–8–27 does not require that the owners' units be deemed "residences." This section merely addresses a condominium's status for tax purposes. It declares that each unit and the accompanying fractional interest in common areas is to be taxed as a separate parcel. *Id.* § 57–8–27(1). Thus, coupled with section 57–8–35(1), which treats condominium developments as subdivisions, each unit is given a separate parcel number and pays separate property taxes, so that no owner is punished for the non-payment of taxes by another. Nothing in the Lien Restriction Act conflicts with this approach to taxation.

2. We do not reach the question of whether the statute is actually unconstitutional because the owners have not separately challenged its constitutionality, nor has the trial court considered and ruled on the issue.

## CONCLUSION

¶ 14 The trial court's grant of summary judgment is reversed because neither the Lien Restriction Act nor the Condominium Ownership Act prevents the filing of mechanic's liens under these circumstances, when a condominium is part of a ten-unit development. Reversed and remanded for proceedings consistent with this opinion.

¶ 15 Justice DURRANT, Justice NEHRING, Judge TAYLOR, and Judge BOHLING concur in Associate Chief Justice WILKINS' opinion.

¶ 16 Having disqualified themselves, Chief Justice DURHAM and Justice PARRISH do not participate herein; District Judge JAMES R. TAYLOR and District Judge WILLIAM B. BOHLING sat.