2004 UT App 392

**JOHN HOLMES CONSTRUCTION, INC., a Utah corporation; and Coulter & Smith, Ltd., a Nevada corporation, Plaintiffs and Appellees,**

v.

**R.A. McKELL EXCAVATING, INC., a Utah corporation; and Rick McKell, an individual, Defendants and Appellants.**

No. 20030707–CA.

Court of Appeals of Utah.

Nov. 4, 2004.

834

Jack W. Reed, James L. Warlaumont, and Mark S. Middlemas, Peterson Reed LLC, Salt Lake City, for Appellants.

Douglas J. Payne and P. Bruce Badger, Fabian & Clendenin, Salt Lake City, for Appellees.

Before BENCH, Associate P.J., DAVIS, and THORNE, JJ.

OPINION

BENCH, Associate Presiding Judge:

¶1 R.A. McKell Excavating, Inc. and Rick McKell (collectively McKell) appeal the trial court's grant of partial summary judgment in favor of John Holmes Construction, Inc. and Coulter & Smith, Ltd. (collectively Holmes) in·Holmes's action for relief from a mechanics' lien. McKell also appeals the trial court's award of attorney fees to Holmes. We affirm. Holmes's other claims of slander of title and tortious interference have been resolved and are not at issue here.

## BACKGROUND

¶ 2 Husting Land & Development (Husting) and Holmes are both construction companies that planned to develop adjacent residential subdivisions in Draper, Utah. Husting's property, Galena Hills, required access through Holmes's property, Parkway Estates. Additionally, both subdivision properties required certain improvements and the installation of certain utilities. Husting and Holmes thus entered into an agreement that provided for the construction and installation of utilities, common roadways, sewer lines, irrigation systems, and other infrastructure necessary for the development of the residential subdivisions. Husting agreed to arrange for the construction of these improvements on Galena Hills and Parkway Estates. Holmes agreed to reimburse Husting on a pro rata basis for its construction expenses.

¶ 3 Husting entered into an agreement with Construct Tech under which Construct Tech would furnish the infrastructure for Galena Hills and Parkway Estates. After terminating its contract with Construct Tech, Husting filed for bankruptcy. Without seeking or obtaining approval from the bankruptcy court, Husting then contracted with McKell for the repair and completion of the infrastructure project. McKell began work on June 30, 1997. However, due to Husting's failure to pay past-due invoices and because future payment and funding seemed unlikely, McKell stopped work and abandoned the project on November 4, 1997.

¶ 4 In 1999, the trustee of Husting's bankruptcy proceedings reached a tentative agreement with Eagle Pointe Financial Group and Eagle Pointe Realty and Management, Inc. (collectively Eagle) to resume work on the infrastructure project. The bankruptcy court entered an order approving the agreement. Eagle subsequently contracted with McKell to return and complete the infrastructure project under a new agreement. According to McKell, as of April 20, 2000, the project was seventy-four percent complete.

¶ 5 On June 7, 2000, McKell recorded a notice of lien against Holmes and Parkway Estates in the amount of $132,824.18. The notice of lien specifically stated that McKell performed its last work on January 26, 2000. While Holmes disputes the accuracy of this date, we review the facts in the light most favorable to McKell. *See Higgins v. Salt Lake County,* 855 P.2d 231, 233 (Utah 1993) ("[I]n reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."). We therefore assume that McKell's last work was performed on January 26, 2000.

¶ 6 The trial court granted Holmes's motion for partial summary judgment, ruling that McKell failed to record the notice of claim of lien within the required time set forth in Utah Code section 38–1–7(1)(a), *see* Utah Code Ann. § 38–1–7(1)(a) (2001), and that McKell's quantum meruit claim failed as a matter of law.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 McKell specifically challenges (1) the trial court's holding that the infrastructure improvements performed on Parkway Estates were for a "residential" purpose rather than for a "non-residential" purpose and (2) the trial court's ruling that McKell's unjust enrichment claim was barred by the existence of an express contract.

¶ 8 With regard to the holding that the improvements were for a "residential" purpose, "[b]ecause the determination of whether summary judgment is appropriate presents a question of law, we accord no deference to the trial court's decision and instead review it for correctness." *DOIT, Inc. v. Touche, Ross & Co.,* 926 P.2d 835, 841 (Utah 1996).

¶ 9 As for review of the unjust enrichment finding, "[w]hether a claimant has been unjustly enriched is a mixed question of law and fact." *Desert Miriah, Inc. v. B & L Auto, Inc.,* 2000 UT 83, ¶ 9, 12 P.3d 580 (citing *Jeffs v. Stubbs,* 970 P.2d 1234, 1244 (Utah 1998)). "Furthermore, we 'afford broad discretion to the trial court in its application of unjust enrichment law to the facts.' " *Id.* (quoting *Jeffs,* 970 P.2d at 1244).

¶ 10 Additionally, McKell argues that the trial court abused its discretion in evaluating Holmes's request for attorney fees and failed to properly apply Utah law. "The appropriate standard for reviewing equitable awards of attorney fees is abuse of discretion." *Hughes v. Cafferty*, 2004 UT 22, ¶ 20, 89 P.3d 148.

## ANALYSIS

### I. Application of Utah Code section 38–1–7

¶ 11 Utah Code section 38–1–7 outlines the statutory time limits for recording a lien. The statute provides:

> A person claiming benefits under this chapter shall file for record with the county recorder of the county in which the property, or some part of the property, is situated, a written notice to hold and claim a lien within 90 days from the date: (a) the person last performed labor or service or last furnished equipment or material on a project or improvement for a residence as defined in Section 38–11–102; or (b) of final completion of an original contract not involving a residence as defined in Section 38–11–102.

Utah Code Ann. § 38–1–7(1)(a), (b) (2001).

¶ 12 McKell maintains that its notice of lien was timely because it falls under section 38–1–7(b). McKell argues that its work on the infrastructure of the Parkway Estates residential subdivision is not work on a "residence" as defined by Utah Code section 38–11–102(20),[1] *see* Utah Code Ann. § 38–11–102(20) (2001), and thus McKell had ninety days from the final completion of the contract to file a notice of lien. Since McKell has not yet finished the infrastructure project, it argues that it has not completed the contract and that this ninety-day limit has not yet accrued. Holmes, however, claims that because this is an improvement for a "residence," the ninety days must run from the date McKell last performed labor or service, which was, at the latest, January 26, 2000. We must therefore decide whether the infrastructure work constitutes an improvement for a "residence" under section 38–11–102(20), which will then allow us to determine when the time accrues for filing a notice of lien.

¶ 13 The Utah Supreme Court has held that "[i]t is not necessary to the attachment of a mechanics' lien that the material or labor be furnished solely on a building structure or that the work be performed solely on the lot on which a building is being erected." *First of Denver Mortgage Investors v. Zundel*, 600 P.2d 521, 525 (Utah 1979). While McKell's work was admittedly not done on a specific, fully-constructed single family residence, the implementation of streets, a sewer system, utilities, and other infrastructure in the Parkway Estates subdivision is "an improvement to real property ... *to be used or occupied as* ... a primary or secondary detached single-family dwelling." Utah Code Ann. § 38–11–102(20) (2001) (emphasis added).

¶ 14 McKell argues that this broad interpretation of "residence" violates the legislative intent as to whom should benefit from a mechanics' lien. However, "a contractor should not be barred from enjoying the benefits of the mechanics' lien statute where his work not only enhances the value of the developer's land, but is also necessary to make residences to be built on such property habitable." *First of Denver*, 600 P.2d at 525.

¶ 15 "Where [a summary judgment] review requires us to examine statutory language, we look first to the plain meaning of the statute." *Young v. Salt Lake City Sch. Dist.*, 2002 UT 64, ¶ 10, 52 P.3d 1230 (citing *State v. Casey*, 2002 UT 29, ¶ 20, 44 P.3d 756). The statute is very clear on its face and refers to a specific definition, which is also very clear. There is no merit to the argument that the construction and improvements of the infrastructure of a residential subdivision, including utilities and services that will directly benefit each home, do not qualify as improvements for the benefit of a "residence." *See First of Denver*, 600 P.2d at 525.

---

1. Utah Code section 38–11–102(20) provides: " 'Residence' means an improvement to real property used or occupied, to be used or occupied as, or in conjunction with, a primary or secondary detached single-family dwelling or multifamily dwelling up to two units, including factory built housing." Utah Code Ann. § 38–11–102(20) (2001).

¶ 16 McKell argues that *LKL Assocs., Inc. v. Farley*, 2004 UT 51, 94 P.3d 279, greatly narrows the definition of "residence," such that McKell's work on Parkway Estates and Galena Hills would not qualify as improvements on a residence. *LKL* involved a mechanics' lien against a ten-unit condominium building. *See id.* at ¶ 2. The supreme court rejected the notion that this was a "residence" under section 38–11–102(20) because "residence" only applies to "the typical single-family home, or a duplex". *Id.* at ¶ 8. The court looked to the plain language of the statute, just as we do here, and concluded that to find otherwise, it "would be forced to ignore a clear statutory mandate and render the definition chosen by the legislature meaningless." *Id.* *LKL* does not narrow the meaning of "residence" as defined in section 38–11–102(20). Rather, it merely holds that we must go no further than the plain language of the definition. *See id.*

¶ 17 Because the improvements on this property are for the benefit of a single-family "residence," and because McKell's last work on the construction was admittedly on January 26, 2000, McKell's filing for a notice of lien on June 7, 2000 is outside of the statutory ninety-day limit. Further, because we hold that McKell's improvements to Parkway Estates and Galena Hills were for a "residence" under section 38–1–7(a), it is unnecessary to examine whether McKell's abandonment of the project in 1997 constituted "final completion of an original contract" under Utah Code section 38–1–7(b) (2001).

## II. Quantum Meruit Claim

¶ 18 The trial court held that McKell's "quantum meruit claim fails because of the existence of an express contract" between McKell and Husting or Eagle. McKell contends that there was no express contract between McKell and Holmes and that the trial court's ruling should be reversed. This court may affirm a trial court's grant of partial summary judgment "if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action." *Bailey v. Bayles*, 2002 UT 58, ¶ 10,

52 P.3d 1158 (quotations and citations omitted).

¶ 19 McKell is legally barred from asserting a quantum meruit claim because it did not exhaust its legal remedies by filing a mechanics' lien in a timely fashion. "As a general rule, one must first exhaust his legal remedies before he may recover on the basis of the equitable doctrine of quantum meruit." *Knight v. Post*, 748 P.2d 1097, 1099 (Utah Ct.App.1988); *see also Interiors Contracting, Inc. v. Navalco*, 648 P.2d 1382, 1388 (Utah 1982); *Commercial Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773, 774 (Utah 1977). McKell's failure to record the notice of lien within the ninety-day limit constitutes a failure to exhaust its legal remedies. Thus, McKell is legally barred from pursuing a quantum meruit claim.

## III. Attorney Fees

¶ 20 McKell appeals the trial court's award of attorney fees to Holmes, claiming that the trial court abused its discretion by relying on insufficient evidence and failing to justify the award through a recitation of the applicable factors. Such factors a trial "court may consider" include "the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, ... and the expertise and experience of the attorneys involved," among other factors. *Cabrera v. Cottrell*, 694 P.2d 622, 625 (Utah 1985).

¶ 21 "Although ... an award [of attorney fees] is a matter of legal right, it must be reasonable and supported by adequate evidence." *Equitable Life & Cas. Ins. Co. v. Ross*, 849 P.2d 1187, 1194 (Utah Ct. App.1993) (citing *Hoth v. White*, 799 P.2d 213, 219 (Utah Ct.App.1990)). "Determination of such fees is within the sound discretion of the trial court, and will not be overturned unless there is a showing of a clear abuse of discretion." *Id.* (citing *Dixie State Bank v. Bracken*, 764 P.2d 985, 989 (Utah 1988)).

¶ 22 In this case, the award of attorney fees is amply supported by the evidence and is reasonable. Holmes submitted an affidavit with specific, detailed time entries and

billing statements. The trial court found this to be sufficient evidence to grant attorney fees and cited the complexity of the issues involved as well as the experience and reputations of Holmes's attorneys as factors leading to its decision. The trial court demonstrated sufficient analysis of the issues, as evidenced by its lowering of the fees. While there were several theories of recovery asserted, including slander of title and tortious interference, the trial court awarded fees only for the work done in relation to the mechanics' lien claim. The trial court also took into account any perceived inefficiency of the attorneys. As a result, the trial court lowered the fees requested from $30,447 to $25,000.

¶ 23 "[T]he order and judgment ... contain[s] findings of fact and legal conclusions, including the finding that the award was reasonable." *Cabrera*, 694 P.2d at 625. Since the record contains adequate evidence that the trial court's award was both reasonable and consistent with the requirements of making such an award, we cannot say that the trial court abused its discretion in determining the amount of attorney fees. Holmes has not sought attorney fees on appeal, thus none will be awarded. *See id.*

## CONCLUSION

¶ 24 For the aforementioned reasons, we conclude that the trial court did not err in granting Holmes's motion for partial summary judgment. Further, the trial court did not abuse its discretion in awarding attorney fees to Holmes.

¶ 25 Accordingly, we affirm.

¶ 26 WE CONCUR: JAMES Z. DAVIS and WILLIAM A. THORNE JR., Judges.