2005 UT 83

**JOHN HOLMES CONSTRUCTION, INC., a Utah corporation, and Coulter & Smith Ltd., a Nevada corporation, Plaintiffs and Respondents,**

v.

**R.A. McKELL EXCAVATING, INC., a Utah corporation, and Rick McKell, an individual, Defendants and Petitioners.**

No. 20041048.

Supreme Court of Utah.

Nov. 22, 2005.

Rehearing Denied Jan. 6, 2006.

P. Bruce Badger, Douglas J. Payne, Salt Lake City, for plaintiffs.

Jack W. Reed, James L. Warlaumont, Timothy J. Curtis, Salt Lake City, for defendants.

WILKINS, Associate Chief Justice:

¶ 1 R.A. McKell Excavating, Inc. and Rick McKell (McKell) ask us to review the court of appeals's decision to affirm the district court's grant of partial summary judgment in favor of John Holmes Construction, Inc., and its successor in interest Coulter & Smith, Ltd., (collectively, Holmes). Holmes sought relief from a mechanic's lien that McKell had placed on Holmes's property. In addition, McKell seeks reversal of the court of appeals's decision affirming the district court's award of attorney fees to Holmes in the amount of $25,000. We reverse.

## BACKGROUND

¶ 2 Husting Land and Development, Inc. purchased property in Draper, Utah for the purpose of constructing a residential subdivision. The property was landlocked and only accessible through an adjacent platted single family subdivision owned by Holmes. In exchange for access, Husting agreed to complete certain infrastructure improvements upon both Holmes's and Husting's properties. Holmes agreed to reimburse Husting on a pro rata basis for the construction expenses on the Holmes parcel.

¶ 3 Husting filed for bankruptcy in January of 1997 then contracted with McKell in April of 1997 to complete the remaining improvements and to make necessary corrections on defective work that had already been done. McKell installed improvements on both parcels, but ceased work on the project in November of 1997 due to non-payment. In April of 1998, McKell sought payment for the work they had done under the 1997 contract with Husting by filing a Motion for Allowance of Administrative Expense with the bankruptcy court. The motion was denied.

¶ 4 In September of 1999, the trustee obtained permission from the bankruptcy court to enter into new contracts for the development and construction of Husting's property. The trustee then retained Eagle Pointe Realty and Management, Inc. and Eagle Pointe Financial (collectively, Eagle Pointe) to complete the subdivision. Eagle Pointe then contracted with McKell to finish phases I, II, and III, and to complete other associated projects that included construction of a road and related improvements through the Holmes parcel.

¶ 5 On June 7, 2000, McKell recorded a notice of lien against Holmes and its subdivision in the amount of $132,824.18. Holmes filed a complaint which, among other things, sought to remove the lien. Holmes filed a motion for partial summary judgment which the district court granted. Additionally, Holmes sought attorney fees as the prevailing party, which the district court awarded

pursuant to Utah Code section 38–1–18 (2001). McKell appealed. The court of appeals affirmed, and we granted certiorari pursuant to Utah Code section 78–2–2(3)(a) (2002).

## STANDARD OF REVIEW

■ ¶ 6 On certiorari, we review the decision of the court of appeals, not the trial court. *Salt Lake County v. Metro W. Ready Mix, Inc.*, 2004 UT 23, ¶ 11, 89 P.3d 155 (citing *Mitchell v. Christensen*, 2001 UT 80, ¶ 8, 31 P.3d 572). The question of whether or not the work McKell performed constituted an improvement to a residence for the purposes of Utah Code section 38–1–7(1)(a) is an issue of statutory construction that we review for correctness, giving no deference to the lower court's legal conclusions. *R.A. McKell Excavating, Inc. v. Wells Fargo Bank, N.A.*, 2004 UT 48, ¶ 7, 100 P.3d 1159 (citing *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 519 (Utah 1997)). Because this issue arises in the context of a summary judgment, we " 'view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party,' " McKell in this case. *Id.* (quoting *Hermansen v. Tasulis*, 2002 UT 52, ¶ 10, 48 P.3d 235).

■ ¶ 7 Whether the court of appeals properly upheld the district court's award for attorney fees is a question of law reviewed for correctness. *Metro W. Ready Mix*, 2004 UT 23, ¶ 11, 89 P.3d 155.

## ANALYSIS

¶ 8 We have agreed to review two issues. The first is whether the infrastructure work performed by McKell constitutes an improvement to a "residence" for purposes of Utah Code section 38–1–7(1)(a) (2001).[1] If the work is deemed to have been for a "residence," then the limitations period for filing a mechanic's lien is set at ninety days from the date "the person last performed labor or service" by Utah Code section 38–1–7(1)(a)

---

1. The 2004 amendment to Utah Code section 38–1–7 removed the distinction between residence and non-residence. Act of February 10, 2004, ch. 85, § 38, 2004 Utah Laws 321. However, the prior distinction applies to this action.

and McKell's mechanic's lien was not timely filed. If, on the other hand, the work was not for a "residence," subpart (1)(b) of section 38–1–7 applies. Subpart (1)(b) sets the filing deadline at ninety days from the "completion of the original contract," and McKell's lien filing would be timely.

¶ 9 The second issue is whether the court of appeals erred in upholding the district court's award for attorney fees. We will review each issue in turn.

## I. GENERAL INFRASTRUCTURE WORK IN A SUBDIVISION IS NOT "AN IMPROVEMENT FOR A RESIDENCE"

■ ¶ 10 We first address whether work on a residential subdivision involving installation of utilities, roadways, and irrigation systems constitutes an improvement to a residence for purposes of Utah Code section 38–1–7(1)(a) (2001). We conclude that is does not.

Section 38–1–7(1)(a) states:

(1) A person claiming benefits under this chapter shall file for record with the county recorder of the county in which the property, or some part of the property, is situated, a written notice to hold and claim a lien within 90 days from the date:

(a) the person last performed labor or services or last furnished equipment or material on a project or improvement for a *residence* as defined in Section 38–11–102.

Utah Code Ann. § 38–1–7(1)(a) (amended 2004) (emphasis added).

¶ 11 McKell argues that the work performed should not and does not qualify as work done on a project or improvement for a residence, as "residence" is defined by Utah Code section 38–11–102(20).[2] This section defines residence as "real property used or occupied, to be used or occupied as, or in conjunction with, a primary or secondary detached single-family dwelling or multifamily dwelling up to two units, including factory

built housing." Utah Code Ann. § 38–11–102(20).

■ ¶ 12 When interpreting statutes, statutes "are to be construed according to their plain language." *LKL Assocs., Inc. v. Farley*, 2004 UT 51, ¶ 7, 94 P.3d 279 (citing *Dick Simon Trucking v. Utah State Tax Comm'n*, 2004 UT 11, ¶ 17, 84 P.3d 1197). Additionally, we " 'assume that each term . . . was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable.' " *R.A. McKell Excavating, Inc. v. Wells Fargo Bank, N.A.*, 2004 UT 48, ¶ 8, 100 P.3d 1159 (quoting *Johnson v. Redevelopment Agency*, 913 P.2d 723, 729 (Utah 1995)). Utilizing these rules, we conclude that work done on a project or improvement for a residence, as defined in Utah Code section 38–11–102(20), does not include infrastructure improvements to a residential subdivision.[3]

¶ 13 This result is in accord with the analysis in our opinion in *LKL*, 2004 UT 51, 94 P.3d 279. In *LKL*, we interpreted the same statutes in determining whether a single unit in a ten-unit condominium fit within the definition of residence. We stated that "[a] single unit of a ten-unit building is neither a detached single-family dwelling, nor a multi-family dwelling of two or fewer units." *Id.* ¶ 6. "[T]he statutory language clearly limits the Act's protections to either the typical single-family home, or a duplex." *Id.* ¶ 8.

¶ 14 The court of appeals stated in its opinion that "*LKL* does not narrow the meaning of 'residence' as defined in section 38–11–102(20). Rather, it merely holds that we must go no further than the plain language of the definition." *John Holmes Constr., Inc. v. R.A. McKell*, 2004 UT App 392, ¶ 16, 101 P.3d 833. The court of appeals misunderstood our intent in *LKL*. We said in *LKL* that the term residence, as defined in Utah Code section 38–11–102(20), means only a typical single family home or duplex.[4] Specifically in this case, the term residence simply does not include infrastructure work done

---

2. The definition of "residence" in now found in Utah Code Ann. § 38–11–102(22) (Supp.2005).

3. By definition, a residential subdivision would include more than one residence.

4. As in the *LKL* case, we again use the word "duplex" to describe "twin-homes" and other variations of a duplex. *See LKL Assocs., Inc. v. Farley*, 2004 UT 51, ¶ 8 n. 1, 94 P.3d 279.

on a residential subdivision for the benefit of more than one residence.

¶ 15 Holmes cites *First of Denver Mortgage Investors v. Zundel*, 600 P.2d 521 (Utah 1979), in support of the court of appeals's decision. Although good law, *First of Denver* is not dispositive as to the issue now before us. The issue there was whether the infrastructure work was lienable. This is vastly different from the question of whether infrastructure work for a residential subdivision qualifies as work for a "residence." The distinction between residence and non-residence was not added to the mechanic's lien statute until 1995, well after *First of Denver* was decided. *See* Act of February 28, 1995, ch. 172, § 38, 1995 Utah Laws 548. We conclude that work on subdivision improvements intended to benefit more than one residence is not work that qualifies under section 38–1–7(1)(a) for the shorter statute of limitations.

## II.  ATTORNEY FEES

¶ 16 Having determined that work in a residential subdivision involving installation of utilities, roadways, sewer lines, and an irrigation system does not constitute a "project or improvement for a residence" for purposes of Utah Code section 38–1–7(1)(a) (2001), we need not reach the question of the award of attorney fees to Holmes. Holmes is no longer the prevailing party. The issue of attorney fees is reserved to be resolved with the ultimate resolution of the case in the district court.

## CONCLUSION

¶ 17 Work performed on a residential subdivision that involves installation of utilities, roadways, sewer lines, and irrigation systems does not constitute a project or improvement for a residence for purposes of Utah Code section 38–1–7(1)(a) as applicable to this case. We reverse the grant of summary judgment on this issue. Because Holmes is no longer the prevailing party, we vacate the award of attorney fees. We reverse and remand for proceedings consistent with this opinion.

¶ 18 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice

NEHRING concur in Associate Chief Justice WILKINS' opinion.