2004 UT 48

**R.A. McKELL EXCAVATING, INC., a Utah corporation, Plaintiff and Appellant,**

v.

**WELLS FARGO BANK, N.A., a national banking association; Carter Construction Development, L.L.C., a Utah limited liability company, d.b.a. Carter Development, L.L.C.; The Ranches, L.C., a Utah limited liability company; and John Does 1–25, Defendants and Appellee.**

Nos. 20020716, 20020855.

Supreme Court of Utah.

June 18, 2004.

Rehearing Denied Oct. 18, 2004.

Jack W. Reed, Mark S. Middlemas, Salt Lake City, for plaintiff.

J. Randall Call, James A. Boevers, Salt Lake City, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 Plaintiff R.A. McKell Excavating, Inc. ("McKell") appeals the district court's grant of summary judgment to defendant Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank"). In granting the Bank's motion, the district court concluded that McKell failed to timely file its mechanic's lien foreclosure action pursuant to Utah Code section 38–1–11(1)(a). We reverse.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 In January 2000, Carter Construction Development, L.L.C. ("Carter") hired McKell to perform excavation, grading, surface, and subsurface improvements on a proposed residential subdivision located in Utah County. The total contract price was approximately $204,000 and the scope of the project consisted of sewer line, water line, storm drain, sidewalk, and site work. On or about January 3, 2000, McKell commenced work under the contract. Two days later, on January 5, Wells Fargo recorded a trust deed on the real property to secure a $780,000 loan made to Carter for the purpose of funding the purchase of the subdivision lots.[1]

¶ 3 As McKell's work proceeded, Carter was extremely slow in making payments. After repeated attempts to procure progress payments, as contemplated by the contract, McKell suspended operations on or about October 5, 2000. At that time, Carter owed McKell nearly $29,000 for already-completed work. McKell then entered into negotiations

---

1. The $780,000 loan was due and payable in full on June 5, 2001, and when Carter defaulted, the Bank elected to foreclose, which ultimately led to the instant action.

with Carter, in hopes of receiving remuneration for all services rendered prior to October 5, 2000. However, when it became clear that Carter was unable, or unwilling, to satisfy its obligations, McKell recorded a mechanic's lien on the real property on November 2, 2000. In accordance with Utah Code section 38–1–7(2)(c), McKell indicated on the lien notice that it last furnished labor, services, equipment or material to the project on or about October 5, 2000. Subsequently, McKell filed a complaint to foreclose its lien on November 21, 2001, one year and nineteen days after it was recorded. Wells Fargo counterclaimed, arguing that its trust deed had priority over the mechanic's lien due to McKell's failure to comply with the applicable statute of repose set forth in Utah Code section 38–1–11(1)(a).

¶ 4 Section 38–1–11(1)(a) requires a non-residential property lien claimant to initiate an enforcement action within "12 months from the date of final completion of the original contract." Utah Code Ann. § 38–1–11(1)(a) (2001). Citing the lien notice, the Bank contended that "final completion of the original contract" occurred on October 5, 2000—the last date McKell provided labor, services, equipment, or material to Carter. Because McKell did not file its complaint until November 21, 2001, over one year later, Wells Fargo asserted that the foreclosure action was untimely and, therefore, the mechanic's lien was invalid.

¶ 5 In response, McKell emphasized that a portion of the original contract remained unfinished and, notwithstanding its earlier suspension of work, expressed an intent to fulfill its outstanding obligations to Carter if adequate progress payments were made for services rendered prior to October 5, 2000. According to McKell, "final completion"—and the attendant triggering of the statute of repose—did not occur until November 2001, when Carter's breach became apparent. Thus, McKell argued that its complaint was timely filed.

¶ 6 Following Wells Fargo's motion for judgment on the pleadings, which was treated as a summary judgment motion, the district court ruled in favor of the Bank. Specifically, the district court interpreted section 38–1–11(1)(a) and determined that "final completion of the original contract" does not require a mechanic's lien claimant to finish *all* work anticipated by the contract before commencing an enforcement action. Instead, it concluded that "cessation" or "abandonment" of work also constitutes "final completion" and found, sua sponte, that McKell terminated the project on October 5, 2000— the last day McKell furnished labor, services, equipment, or material to Carter, as evidenced by the lien notice. As such, the district court reasoned that the statute of repose began to run on October 6, 2000, and expired on October 5, 2001, forty-six days before McKell filed its complaint. Alternatively, the district court also noted that, even if it were to accept the recording date of the mechanic's lien—November 2, 2000—as the triggering event, McKell was still late. Thus, the district court awarded summary judgment to Wells Fargo. After having the order certified as a final judgment, McKell now appeals.

## STANDARD OF REVIEW

¶ 7 We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions. *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 519 (Utah 1997). In the context of a summary judgment motion, we likewise employ a correctness standard and "view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Hermansen v. Tasulis*, 2002 UT 52, ¶ 10, 48 P.3d 235 (internal quotation omitted).

## ANALYSIS

¶ 8 The central issue presented in this appeal is whether, properly interpreted, Utah Code section 38–1–11(1)(a) bars McKell's mechanic's lien foreclosure action. Pursuant to general principles of statutory interpretation, "we ... look first to the ... plain language," recognizing that "our primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve." *Evans v. State*, 963 P.2d 177, 184 (Utah 1998). In doing so, we "assume that each term ... was used advisedly;

thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Johnson v. Redevelopment Agency*, 913 P.2d 723, 727 (Utah 1995) (internal quotation omitted).

¶ 9 Here, McKell contends that the plain language of section 38–1–11(1)(a) mandates that "final completion of the original contract" occur before the statute of repose begins to run. *See* Utah Code Ann. § 38–1–11(1)(a) (2001). Referencing previous versions of this provision, McKell argues that the legislature was aware of alternative triggering events for the statute of repose, but specifically chose "final completion" to apply to non-residential property lien claimants. For example, McKell notes that prior to May 2, 1994, section 38–1–11 required enforcement actions to be initiated within "twelve months after the *completion of the original contract*, or the *suspension of work thereunder for a period of thirty days*." *Id.* § 38–1–11 (1988) (emphasis added). Likewise, the immediate predecessor to the current section 38–1–11(1)(a), which was in effect from May 2, 1994 to May 1, 1995, provided that a complaint be filed within "twelve months from the date the lien claimant *last performed labor and services* or *last furnished equipment or material* on an original contract." *Id.* § 38–1–11(1)(a) (1994) (emphasis added). Finally, McKell points to section 38–1–11(1)(b) of the current statute, which addresses liens on residential property and, using language nearly identical to that found in the 1994 version of section 38–1–11(1)(a), dictates that enforcement actions be filed within "180 days from the date the ... claimant *last performed labor and services* or *last furnished equipment or material*." *Id.* § 38–1–11(1)(b) (2001) (emphasis added). In short, McKell asserts, based on the plain language of section 38–1–11(1)(a) and the selection of alternative triggering events in both section 38–1–11(1)(b) and earlier versions of the statute, that the legislature deliberately chose "final completion of the original contract" as the prerequisite for the running of the statute of repose for non-residential property lien claimants. We agree.

¶ 10 A straightforward examination of section 38–1–11(1)(a) supports our conclusion. The American Heritage Dictionary defines "final" as "[p]ertaining to or constituting the end result of a process or procedure." *The American Heritage Dictionary of the English Language* 492 (1981). In turn, "completion" is defined as "[t]he act of concluding, perfecting, or making entire." *Id.* at 272. Thus, given the plain and ordinary meaning of these words, it is clear that "final completion of the original contract" necessarily implies the satisfaction of all obligations contemplated by the initial agreement.[2]

¶ 11 Although Wells Fargo urges us to reject such an interpretation, on grounds that it will allow lien claimants to cloud title to non-residential property in perpetuity, we find this argument unpersuasive. The purpose of the mechanic's lien statute is to "provide protection to those who enhance the value of a property by supplying labor or materials," not to safeguard the rights of property owners. *AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289, 291 (Utah 1986). Furthermore, in those rare instances where a lien claimant's interest is served by denying that "final completion" has occurred, a quiet title action remains a viable option for property owners seeking to expeditiously resolve such disputes.

¶ 12 In this case, it is undisputed that at the time McKell filed its complaint on November 21, 2001, it had not yet completed the full scope of work contracted for by Carter. Consequently, we hold that, for purposes of triggering the statute of repose, the requirement of "final completion of the original contract" was not satisfied and, therefore, section 38–1–11(1)(a) does not bar McKell's foreclosure action.

¶ 13 Lastly, although our decision is based on the plain language of section 38–1–11(1)(a), we also hold that the district court erred in equating "cessation" or "abandonment" with "final completion." In finding sua sponte that McKell abandoned the pro-

---

2. However, we note that "final completion of the original contract" may also occur upon breach, as happened here.

ject on October 5, 2000—the last day it furnished labor, services, material, or equipment to Carter, as evidenced by the lien notice—the district court wrote an additional triggering event into the statute, one which was conspicuously rejected by the legislature in the May 1, 1995 amendment. Had the legislature intended the statute of repose for liens on non-residential property to run from "the date the ... claimant last performed labor and services or last furnished equipment or material" instead of from "final completion of the original contract," it could have said so explicitly, as it did in the context of residential property. *See* Utah Code Ann. § 38–1–11(1)(a), (b) (2001).

## CONCLUSION

¶ 14 We reverse the district court's grant of summary judgment to Wells Fargo on its claim that McKell failed to comply with the statute of repose governing mechanic's lien foreclosure actions. Based on the plain language of Utah Code section 38–1–11(1)(a), we hold that, absent a breach, "final completion of the original contract" means that all obligations contemplated by the initial agreement must be satisfied before the statute of repose begins to run. Here, McKell had not completed the full scope of work contracted for by Carter at the time the complaint was filed and, therefore, "final completion" had not occurred. Consequently, McKell's enforcement action was timely. McKell is awarded its attorney fees for the appeal pursuant to Utah Code section 38–1–18(1) (2001). Reversed and remanded for further proceedings consistent with this opinion and for determination of attorney fees.

¶ 15 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Judge PEULER concur in Associate Chief Justice WILKINS' opinion.

¶ 16 Having disqualified himself, Justice NEHRING does not participate herein; District Judge SANDRA N. PEULER sat.