2004 UT App 273

**FLORIDA ASSET FINANCING CORPORATION, a Florida corporation, Plaintiff and Appellee,**

**v.**

**UTAH LABOR COMMISSION; Employers' Reinsurance Fund; and Robert W. Williams, an individual, Defendants and Appellants.**

**No. 20030535–CA.**

Court of Appeals of Utah.

Aug. 19, 2004.

Alan Hennebold, Labor Commission, Salt Lake City, for Appellants.

Mark R. Gaylord, Craig H. Howe, and Matthew L. Moncur, Ballard Spahr Andrews & Ingersoll, Salt Lake City, for Appellee.

Before BILLINGS, P.J., and GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

¶ 1 The Utah Labor Commission (the Commission) appeals the trial court's grant of

Florida Asset Financing Corporation's (Florida Asset) motion for partial summary judgment, and the trial court's order that the Commission pay $57,095.96 in damages to Florida Asset. Specifically, the Commission contends that the trial court erred in interpreting Utah Code Annotated section 34A–2–422 (2001). We reverse.

## BACKGROUND

¶ 2 In 1990, Robert Williams, a truck driver, was involved in a traffic accident while working. Williams suffered serious head, back, shoulder, and knee injuries in the accident. In November 1994, the Utah Industrial Commission [1] awarded permanent total disability compensation to Williams. Under the compensation order, Williams was awarded monthly disability benefits for the remainder of his life or until further ordered by the Commission.

¶ 3 In May 1995, Williams signed a security agreement and promissory note with Florida Asset in exchange for a loan of $68,706.06. The note provided that repayment of the loan would be via monthly payments from June 1995 to April 2012. To secure the note, Williams established the "Robert W. Williams Irrevocable Trust" (Trust). The stated purpose of the Trust was the "management of certain of [Williams]'s assets" and for the "maintenance, comfort, and support of [Williams]." The security agreement and note signed by Williams assigned and transferred all of his interest in the Trust to Florida Asset as security for payment of the loan. Additionally, as provided for in the Trust document, Williams sent the Commission an "Irrevocable Letter of Direction," which informed the Commission of the Trust, and directed the Commission to pay Williams's disability payments to him in care of Philip Nadel, trustee of the Trust. Finally, prior to any default, Williams stipulated to a consent decree filed

in Alachua County, Florida Circuit Court. The circuit court entered an Amended Consent Final Judgment (First Florida Judgment) on June 30, 1995, prohibiting Williams from modifying the Irrevocable Letter of Direction. In May 1995, the Commission agreed in a letter to Williams to honor the terms of the Irrevocable Letter of Direction. In a separate letter sent on the same day, the Commission agreed to send the checks payable to Williams to Nadel as trustee of the Trust.

¶ 4 For several years, the Commission sent Williams's monthly disability benefits to the Trust. In 1997, Williams defaulted under the terms of the promissory note and security agreement.[2] As a result, the Florida Circuit Court entered the Second Amended Final Judgment (Second Florida Judgment) awarding Florida Asset a judgment against Williams, in the sum of $216,933.71 due under the note and $1100 in attorney fees.[3] In November 1999, Williams instructed the Commission to send the compensation payments directly to him rather than to the Trust. The Commission complied with Williams's updated instructions. In June 2000, Florida Asset attempted to enforce both Florida judgments by filing them in the Fifth District Court, Washington County, Utah. Williams failed to appear at a subsequent hearing, and in October 2000, the trial court ordered Williams to redirect his compensation benefits to the Trust, based on the two Florida orders and the Irrevocable Letter of Direction. After Williams refused to redirect the payments, the trial court issued a warrant and Williams was eventually arrested for contempt. At a followup hearing, by order of the court, Williams signed a letter redirecting payments to the Trust.

¶ 5 In late March 2001, shortly after redirecting payments back to the Trust, Williams filed for Chapter 7 bankruptcy protection. Due to the bankruptcy, the Commission did

---

1. In 1997, the Utah Industrial Commission was renamed the Utah Labor Commission.

2. The nature of the breach is not specified in the parties' briefs. It is also unclear whether or to what extent Florida Asset received funds in the Trust.

3. The Second Florida Judgment is not included in the record on appeal but the parties do not dispute its content. Florida Asset describes the $216,933.71 as principal, but we assume it must represent the principal sum of $68,000 plus accrued interest and perhaps penalties and/or accelerated payments. A copy of the promissory note is also not included in the record on appeal.

not implement Williams's court ordered instructions to redirect the payments to the Trust. In July 2001, the bankruptcy court granted Florida Asset relief from the automatic stay in order to pursue its claims under state law. After receiving a copy of the Order for Relief from the automatic stay, the Commission notified Florida Asset that it intended to honor the instructions Williams had signed redirecting payments back to the Trust, but because of a six-month advance paid to Williams no "additional benefits [would] be paid until December 2001." In November 2001, the Commission notified Florida Asset that Williams had once again updated his instructions and redirected payment of the benefits directly to him, and that the Commission intended to honor Williams's latest instruction.

¶ 6 Florida Asset responded in July 2002, by filing a complaint in the Third District Court against the Commission and Williams. The trial court entered a default judgment against Williams after he failed to timely answer the complaint. The Commission moved to dismiss the complaint on the ground that no contractual relationship existed between Florida Asset and the Commission. Florida Asset filed a motion for partial summary judgment on its secured transaction claims. The trial court denied the Commission's motion to dismiss and granted Florida Asset partial summary judgment. The trial court ordered the Commission to comply with the Irrevocable Letter of Direction and awarded Florida Asset judgment against the Commission in the amount of $57,095.96. The Commission appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 7 The Commission argues that Utah Code Annotated section 34A–2–422 (2001) requires it to pay Williams's benefits to him directly, and precludes payment to Florida Asset through the Trust. " '[M]atters of statutory construction are questions of law that are reviewed for correctness.' " *Esquivel v. Labor Comm'n*, 2000 UT 66, ¶ 13, 7 P.3d 777 (quoting *Platts v. Parents Helping Parents*, 947 P.2d 658, 661 (Utah 1997)). "In addition, '[w]here the issue is a question of law, . . . appellate review gives no deference to the trial judge's or agency's determination, because the appellate court has the power and duty to say what the law is and to ensure that it is uniform throughout the jurisdiction.' " *Id.* (quoting *Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997) (alterations in original) (other quotations and citation omitted)).

## ANALYSIS

### I. Utah Code Annotated Section 34A–2–422

¶ 8 The Commission argues that by granting Florida Asset's motion for partial summary judgment, the trial court misinterpreted the plain language of Utah Code Annotated section 34A–2–422 (2001), which states: "Compensation before payment shall be exempt from all claims of creditors, and from attachment or execution, and shall be paid only to employees or their dependents." *Id.*

¶ 9 In this case, Florida Asset seeks to compel the Commission to ignore Williams's most recent direction and pay the benefits according to his previous direction and the contract between Williams and Florida Asset. The interpretation of section 34A–2–422 in this context presents an issue of first impression in Utah. When interpreting the plain language of a statute, " '[w]e assume that each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable.' " *Gillman v. Sprint Communications Co.*, 2004 UT App 143, ¶ 7, 91 P.3d 858 (quoting *Carlie v. Morgan*, 922 P.2d 1, 3 (Utah 1996)).

¶ 10 Statutes similar to section 34A–2–422 exempting worker's compensation benefits from creditors' claims vary significantly from state to state, as do court interpretations of these laws. We therefore begin with a preliminary discussion of other states' exemption statutes and interpretations to assist in our analysis of Utah's statute.

### A. Assignment of Benefits

¶ 11 First, unlike Utah's, most states' exemption statutes explicitly prohibit the assignment of benefits. *See, e.g.*, Ariz.Rev.

Stat. § 23–1068 (2004) ("Compensation, whether determined or not, is not, prior to the delivery of the warrant therefor, assignable."); Cal. Labor Code § 4900 (2004) ("No claim for compensation, except as provided in Section 96, is assignable before payment, but this provision does not affect the survival thereof."); Fla. Stat. ch. 440.22 (2004) ("No assignment, release, or commutation of compensation or benefits due or payable under this chapter ... shall be valid...."); Ky. Rev.Stat. Ann. § 342.180 (2004) ("No claim for compensation under this chapter shall be assignable.... All compensation and claims therefor, except child support obligations, shall be exempt from all claims of creditors."); Nev.Rev.Stat. 616C.205 (2004) ("[C]ompensation payable or paid ..., whether determined or due, or not, is not, before the issuance and delivery of the check, assignable, is exempt from attachment, garnishment and execution, and does not pass to any other person by operation of law.").

¶ 12 Interpreting Florida's exemption statute specifically prohibiting assignments, a Florida Court of Appeals invalidated a financial arrangement similar to the one in this case. In *J.G. Wentworth, S.S.C. v. Safeco Life Insurance Co.*, 755 So.2d 138 (Fla.Dist. Ct.App.1999), an injured employee assigned the right to her future worker's compensation benefits in exchange for a cash payment. *See id.* at 138. After directing the payments to be paid to her estate, she signed a will transferring the estate's interest in the payments to the plaintiff lender. *See id.* The court held that the entire arrangement, including her change of beneficiary, was an invalid assignment. *See id.* at 138–39. Thus, we note that the arrangement between Florida Asset and Williams would be unenforceable under Florida law. Moreover, several court decisions have noted that where assignment of benefits is specifically prohibited, that prohibition extends to funds that are traceable or identifiable to compensation benefits. *See, e.g., In Re Delgado*, 967 F.2d 1466, 1467 (10th Cir.1992); *Broward v. Jacksonville Med. Ctr.*, 690 So.2d 589, 592 (Fla. 1997); *Highland Park State Bank v. Salazar*, 555 S.W.2d 484, 487 (Tex.App.1977).

¶ 13 A few states, including Utah, do not expressly prohibit assignments in their exemption statutes. Utah's statute provides that compensation "shall be exempt from all claims of creditors, and from attachment or execution." Utah Code Ann. § 34A–2–422 (2001). Ohio and New Mexico's exemption statutes are nearly identical to Utah's. *See* N.M. Stat. Ann. § 52–1–52 (2004) ("Compensation benefits shall be exempt from claims of creditors and from any attachment, garnishment or execution and shall be paid only to such worker or his personal representative...."); Ohio Rev.Code Ann. § 4123.67 (2004) ("Except as otherwise provided ..., compensation before payment shall be exempt from all claims of creditors and from any attachment or execution, and shall be paid only to the employees or their dependents."); *see also* Tex. Lab.Code Ann. § 408.201 (2004) ("Benefits are exempt from: (1) garnishment; (2) attachment; (3) judgment; and (4) other actions or claims."). Court decisions in these states have noted that in the absence of statutory language prohibiting assignments, an injured worker could assign his benefits. *See Romero v. Earl*, 111 N.M. 789, 810 P.2d 808, 811 (1991); *Ohio Bell Tel. Co. v. Antonelli*, 29 Ohio St.3d 9, 504 N.E.2d 717, 718 (1987); *Highland Park State Bank*, 555 S.W.2d at 488.

¶ 14 Comparing Utah's exemption statute to those of other states, it is clear that section 34A–2–422 does not explicitly prohibit the assignment of benefits received. Our statute precludes only attachment or execution. If the Utah legislature wishes to prohibit injured workers from assigning compensation payments, we encourage it to change the language of section 34A–2–422 to make this intention clear. That is a matter, however, for the legislature to address.

### B. Payment of Benefits

¶ 15 Another significant difference between Utah's and other states' exemption statutes is that section 34A–2–422 limits the exemption's protection against attachment or execution to "compensation before payment." Utah Code Ann. § 34A–2–422 (2001). Other exemption statutes use broader language allowing for protection of benefits either before

and/or after they are received by the worker. *See, e.g.,* Ariz.Rev.Stat. § 23–1068 (2004) (referring to "[c]ompensation, whether determined or not"); Fla. Stat. ch. 440.22 (2004) (stating no assignment "due or payable"); Nev.Rev.Stat. 616C.205 (2004) (providing that "compensation payable or paid ..., whether determined or due, or not."); N.M. Stat. Ann. § 52–1–52 (2004) (referring only to "[c]ompensation benefits" being exempt); Tex. Lab.Code Ann. § 408.201 (2004) (stating only that "[b]enefits" are exempt). Only Ohio's statute uses the same limiting language as Utah, prohibiting attachment or execution of "[c]ompensation before payment." Ohio Rev.Code Ann. § 4123.67 (2004).[4]

¶ 16 In *Parker v. Indus. Commission,* 87 Utah 468, 50 P.2d 278 (1935),[5] the Utah Supreme Court examined the limits of Utah's exemption statute. The court noted that nothing in the statute prevented injured workers from using their compensation to pay creditors, but stated that the purpose was to protect benefits from creditors "before the employee reduces it to his possession." *Id.* at 278. Likewise, in *Ohio Bell Telephone Co.,* the Ohio Supreme Court, interpreting an exemption statute identical to Utah's, stated that Ohio's statute "exempts workers' compensation benefits only *'before* payment' is made to a claimant. There is no exemption of benefits from attachment provided for under either statute *after* the award has been paid to the claimant." 504 N.E.2d at 718.

¶ 17 Finally, Utah's exemption statute differs from many other states' statutes because it explicitly provides that benefits "shall be paid only to employees or their dependents." Utah Code Ann. § 34A–2–422 (2001). This statutory provision is reflected in an administrative rule promulgated by the Utah Labor Commission that states: "Any entity issuing compensation checks or drafts must make those checks/drafts payable *directly* to the injured worker and must mail them directly to the last known mailing address of the injured worker." Utah Admin. Code R612–1–6(A) (2004) (emphasis added).

¶ 18 Given the plain language of section 34A–2–422, and the supreme court's statements in *Parker,* an injured worker who has received compensation may voluntarily assign those benefits to a creditor or other third party. However, it is equally clear that no assignment of funds is effective if it attempts to transfer benefits prior to possession of the compensation by the recipient. *See Parker,* 50 P.2d at 278; *Ohio Bell Tel. Co.,* 504 N.E.2d at 718. Under section 34A–2–422, and rule 612–1–6(A), the Commission is obligated to pay the benefits directly to the injured worker or the worker's dependents. After payment of the compensation, whether in a lump-sum or monthly installments, the direction and use of the funds is outside the control and mandate of the Commission.[6]

¶ 19 Furthermore, it is significant to highlight that in those cases from other states where a creditor was seeking to attach or garnish compensation payments pursuant to an assignment or other agreement, in no case was the payor state agency ordered to make the payments directly to the creditor. *See, e.g., Sullo v. Cinco Star, Inc.,* 755 So.2d 822, 823 (Fla.Dist.Ct.App.2000) (permitting bank holding petitioner's compensation proceeds to disburse proceeds to secured creditor first, then remainder to petitioner); *Highland Park State Bank v. Salazar,* 555 S.W.2d 484,

---

**4.** For detailed analysis of statutes and case law on the question of whether received award proceeds are exempt, *see* Jay M. Zitter, Annotation, *Validity, Construction, and Effect of Statutory Exemptions of Proceeds of Workers' Compensation Awards,* 48 A.L.R. 5th 473, § 18, 534–47 (1997).

**5.** In *Parker v. Industrial Commission,* 87 Utah 468, 50 P.2d 278 (1935), the court considered whether the widow of an injured worker was, on behalf of the deceased's estate, entitled to accrued compensation which was awarded but unpaid by the Commission prior to the worker's death. *Id.* at 278. At the time this case was decided, Utah's exemption statute was located in Utah Code Annotated section 42–1–74 (1933), but the language was the same as that in Utah Code Annotated section 34A–2–422 (2001).

**6.** We also note, however, that while a recipient could technically assign the right to future compensation payments, in Utah, such an assignment is not enforceable against the Commission, and only against the recipient after payment is received. *See* Utah Code Ann. § 34A–2–422 (2001) ("Compensation before payment shall be exempt from all claims of creditors....").

488 (Tex.App.1977) (allowing bank to recover compensation proceeds held in a savings account after appellee defaulted on bank loan with account pledged as security); *Ohio Bell Tel. Co.*, 504 N.E.2d at 718 (holding that creditor telephone company could attach compensation proceeds held in bank account because payments had already been paid to worker).

## II. Williams's Arrangement With Florida Asset

¶ 20 In light of this background analysis of Utah's exemption statute, we turn to the facts presented in this case. Shortly after receiving an award of compensation for his injuries, Williams pledged his future benefits worth $236,624.00 to Florida Asset as security for a loan of $68,706.06. As part of this transaction, Williams established the Trust, and named a Florida resident, Philip Nadel, as the trustee. While the Trust's stated purpose was to provide for Williams's "maintenance, comfort and support," the Trust's only asset was his benefits payments to be received from 1995 to 2012, the precise length of time required to satisfy Williams's promissory note with Florida Asset. Finally, Williams sent an Irrevocable Letter of Direction to the Commission requesting that all compensation payments be made to him, in care of the Trust.

¶ 21 Although the checks were sent by the Commission to Williams in care of the Trust, in actuality, Williams never saw or received the payments. The payments each month were mailed directly from the Commission to the Trust. The Florida Court of Appeals in *J.G. Wentworth, S.S.C. v. Safeco Life Insurance Co.*, 755 So.2d 138 (Fla.Dist.Ct.App. 1999), found a similarly creative paperwork strategy to be an improper assignment, stating: "[T]he employee's agreement to change the beneficiary was simply part of the entire assignment of benefits transaction. Where documents are executed as part of the same transaction they should be considered together in determining their meaning and effect." *Id.* at 139.

¶ 22 We likewise view Williams's Irrevocable Letter of Direction to be part of the entire transaction with Florida Asset. In essence, Florida Asset, which has a judgment against Williams, seeks to garnish Williams's disability payments. Williams has now rescinded his voluntary direction to the Commission to have his payments sent to the Trust. The Commission is required by statute and administrative rule to send payments directly to the worker. Furthermore, Utah's statute, by protecting benefits "from all claims of creditors" "before payment" to employees, requires that the worker is entitled to actual receipt of the benefits. Utah Code Ann. § 34A–2–422. Only after such payment may a creditor enforce an assignment. Although in Utah, a creditor is not expressly prohibited from obtaining an assignment of benefits after receipt by the worker, it is clear that such an arrangement is a "remedy or procedure for the recovery or collection of a debt." *In re Delgado*, 967 F.2d 1466, 1468 (10th Cir.1992) (quotations and citation omitted). In this case Florida Asset obviously knew the source of its collateral for Williams's debt.

¶ 23 The Commission must comply with Williams's directions about where to send his disability payments. Any other result places the Commission in an untenable position of trying to determine the validity of an assignment or agreement made by the worker, and forces the Commission to discern the legitimacy of a third party's claim to the benefits. This is contrary to the plain language of section 34A–2–422 and the public policy embodied therein.

> This interpretation accomplishes the legislative purpose of assuring that, at the time the employee receives the compensation, the money will be available, intact, to him for use for the purpose for which it is intended—the support of himself and his dependents during the period of his disability. He may, of course, use the money for whatever purpose he deems advisable, but he can be divested of his right to the money only as the result of his voluntary acts *after* he has received it.

*Highland Park State Bank v. Salazar*, 555 S.W.2d 484, 487–88 (Tex.App.1977) (emphasis added).

¶ 24 We note that Williams may benefit by collecting disability payments after presumably having spent the loan proceeds he has failed to repay. Although the proper remedy for Williams's breach of contract with Florida Asset is not to allow Florida Asset to force the Commission to bypass Williams and the statutory structure for payment of benefits, Florida Asset retains its remedy of enforcing its several judgments against Williams directly.

¶ 25 Therefore, we reverse the trial court's order granting Florida Asset's motion for partial summary judgment and remand for proceedings consistent with this opinion.

¶ 26 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and GREGORY K. ORME, Judge.