2006 UT 58

**FLORIDA ASSET FINANCING CORPORATION, a Florida corporation, Petitioner,**

v.

**UTAH LABOR COMMISSION; Employers' Reinsurance Fund; and Robert W. Williams, an individual, Respondents.**

No. 20040802.

Supreme Court of Utah.

Sept. 29, 2006.

Mark R. Gaylord, Craig H. Howe, Matthew L. Moncur, Salt Lake City, for petitioner.

Alan Hennebold, Salt Lake City, for respondents.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 In this case, Petitioner Florida Asset Financing Corporation (Florida Asset) seeks to force Respondent Utah Labor Commission (the Commission) to send disability compensation payments owed to Robert W. Williams (Williams) to a trust established by Williams and in which Florida Asset holds a beneficial interest. We accepted certiorari to address the proper interpretation and application of section 34A–2–422 of the Utah Code (section 422), which governs disability compensation payments. We hold that section 422 does not prohibit an employee entitled to disability compensation payments from requesting that the Commission direct his or her payments to a trust in which a third-party creditor is the beneficiary. However, if the employee asks the Commission to redirect the disability compensation payments to him or her, the Commission must comply because section 422 requires that the Commission pay only the employee. Accordingly, a third-party creditor cannot compel the Commission to direct an employee's payments against the employee's wishes.

## BACKGROUND

¶ 2 In 1990, Williams was injured in an accident during the course of his employment as a truck driver, suffering serious injuries to his head, back, shoulders, and knees. In 1994, the Commission awarded Williams permanent disability benefits, which entitled him to receive monthly disability compensation payments for the rest of his life or until otherwise determined by the Commission.

¶ 3 In 1995, Williams took a series of steps toward obtaining a loan from Florida Asset. Williams first created the Robert W. Williams Irrevocable Trust (the Trust). He then sent an "Irrevocable Letter of Direction" to the Commission requesting that the Commission send his disability compensation payments directly to the Trust. An employee of the Commission signed the Irrevocable Letter of Direction and drafted a document stating that the Commission would honor Williams' request. Williams also signed a promissory note in favor of Florida Asset in exchange for a loan of $68,706.06. To secure the note, Williams signed a security agreement assigning his beneficial interest in the Trust and the Irrevocable Letter of Direction to Florida Asset. The terms of the note required Williams to pay back the loan in monthly installments until April of 2012.[1] The Commission asserts—and the record appears to support—that the sum of the monthly payments would equal $236,624.78. Finally, Williams stipulated to a "Consent Final Judgment" (First Florida Judgment) filed in the Alachua County Florida Circuit Court that required him to specifically perform in accordance with the Irrevocable Letter of Direction until he paid the note in full.

¶ 4 Over the next four years, the Commission sent Williams' compensation payments

---

1. While the promissory note is not included in the record on appeal, neither party disputes its existence or content.

directly to the Trust. In 1997, Williams defaulted on the promissory note and the security agreement.[2] As a result, a Florida court entered a "Second Amended Final Judgment" (Second Florida Judgment) against Williams, ordering him to pay $216,933.71 then due under the note and $1100 in attorney fees.[3] In 1999, Williams instructed the Commission to stop paying the Trust and send the payments directly to him. The Commission followed Williams' instructions. Florida Asset then sought to enforce the First and Second Florida Judgments by filing suit in Utah in the Fifth Judicial District Court of Washington County. Williams did not appear at the scheduled court hearings, and the court issued a bench warrant for his arrest. Subsequently, Williams was arrested and incarcerated for contempt. The court ultimately ordered Williams to sign a letter directing the Commission to send his compensation payments to the Trust.

¶ 5 Florida Asset presented the court-ordered letter to the Commission. The Commission, however, refused to redirect Williams' payments to the Trust because Williams had since filed for bankruptcy and a statutorily imposed automatic stay was in place. In August of 2001, Florida Asset received an order granting relief from the automatic stay from the bankruptcy court, and it again presented the court-ordered letter to the Commission. The Commission notified Florida Asset that it would comply with Williams' directions and send his payments to the Trust, but that it would not do so until December of 2001 because it had given Williams a six-month advance on his compensation payments. However, in November of 2001 the Commission notified Florida Asset that Williams had once again directed the Commission to send his payments directly to him and that the Commission intended to honor his request.

¶ 6 In July of 2002, Florida Asset filed an action against Williams and the Commission in the Third Judicial District Court of Salt Lake County. In its complaint, Florida Asset asserted claims for breach of contract, promissory estoppel, and enforcement of its security interest. Williams did not respond to the complaint, and the court entered a default judgment against him. With respect to the Commission, the court granted Florida Asset's motion for partial summary judgment and ordered the Commission to send Williams' benefit payments to the Trust.

¶ 7 The Commission appealed the district court's judgment to the Utah Court of Appeals. The court of appeals reversed, holding that Florida Asset could not force the Commission to pay the Trust. *Fla. Asset Fin. Corp. v. Utah Labor Comm'n*, 2004 UT App 273, ¶¶ 24–25, 98 P.3d 436. The court of appeals noted that section 422 does not specifically prohibit the assignment of compensation benefits. *Id.* ¶ 14. However, the court held that the Commission must follow Williams' instructions regarding his disability compensation payments because section 422 directs the Commission to make payments only to the employee entitled to them. *Id.* ¶ 23. Therefore, the court concluded that Florida Asset could not force the Commission to direct Williams' payments to the Trust, but must instead proceed against Williams directly. *Id.* ¶ 24. We accepted certiorari to review the court of appeals' decision, which we now affirm. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(a) (2002).

## STANDARD OF REVIEW

¶ 8 "On certiorari, we review the decision of the court of appeals, not the trial court." *John Holmes Constr., Inc. v. R.A. McKell Excavating, Inc.*, 2005 UT 83, ¶ 6, 131 P.3d 199 (citing *Salt Lake County v. Metro W. Ready Mix, Inc.*, 2004 UT 23, ¶ 11, 89 P.3d 155). As the decision of the court of appeals rests on questions of statutory interpretation, we review it for correctness, affording no deference to the court of appeals' legal conclusions. *R.A. McKell Excavating, Inc. v. Wells Fargo Bank, N.A.*, 2004 UT 48, ¶ 7, 100 P.3d 1159 (citing *Stephens v. Bonne-*

---

**2.** The record does not discuss the nature of the breach or to what extent Florida Asset had received funds in the Trust at this time.

**3.** While the Second Florida Judgment is likewise not included in the record, neither party disputes its existence or content.

*ville Travel, Inc.*, 935 P.2d 518, 519 (Utah 1997)).

## ANALYSIS

 ¶ 9 We granted certiorari in this case to consider two issues: (1) whether section 34A–2–422 of the Utah Code proscribes payments to a trust employed to facilitate an assignment of those payments to a creditor, and (2) whether the Labor Commission may be obligated to direct payments to a trust for subsequent transfer to a creditor. The resolution of both issues turns on the proper interpretation of Utah Code section 34A–2–422 (2001). Section 422 states that "[c]ompensation before payment shall be exempt from all claims of creditors, and from attachment or execution, and shall be paid only to employees or their dependents." [4] *Id.* Under our established rules of statutory construction, we look first to the plain meaning of the pertinent language in interpreting this section; only if the language is ambiguous do we consider other sources for its meaning. *See J. Pochynok Co. v. Smedsrud,* 2005 UT 39, ¶ 15, 116 P.3d 353 (citing *Stephens v. Bonneville Travel,* 935 P.2d 518, 520 (Utah 1997)). Moreover, we interpret the plain language of this section "in harmony with other statutes in the same chapter and related chapters." *Mountain Ranch Estates v. Utah State Tax Comm'n,* 2004 UT 86, ¶ 11, 100 P.3d 1206 (quoting *Miller v. Weaver,* 2003 UT 12, ¶ 17, 66 P.3d 592). Our overall goal "is to give effect to the legislative intent, as evidenced by the [statute's] plain language, in light of the purpose the statute was meant to achieve." *Foutz v. City of S. Jordan,* 2004 UT 75, ¶ 11, 100 P.3d 1171 (quoting *State v. Burns,* 2000 UT 56, ¶ 25, 4 P.3d 795). With these rules in mind, we consider the first issue.

 ¶ 10 Section 422 does not, on its face, prohibit a trust arrangement designed to facilitate the assignment of disability compensation benefits to a creditor, such as the arrangement at issue here. Rather, section 422 merely prevents creditors from claiming a right to an employee's compensation payments *before* those payments are made to the employee by forbidding creditors to attach or execute on these payments. The plain meaning of this language indicates that section 422 is designed to prevent creditors from garnishing an employee's compensation payments.[5] However, nothing in section 422 prevents an employee entitled to compensation payments from asking the Commission to send the payments to a trust. In such a situation, the employee is merely exercising the right to control the disposition of the payments. This type of arrangement does not run counter to the plain meaning of section 422 because the payments are, pursuant to the employee's directions, being "paid only to employees." *Id.* Moreover, this conclusion does not change if the employee then assigns the beneficial interest in the trust to a creditor because the creditor is a third party to the relationship between the employee and the Commission. The creditor receives compensation *after* payment to the employee and not "compensation *before* payment." *Id.* (emphasis added). The employee still retains beneficial use and control of the payments, and has simply chosen to assign the payments after receipt, to a creditor. Thus, we conclude that the plain meaning of section 422 does not prohibit employees enti-

---

4. Section 422 was amended in 2004 to include the language "except as provided in Sections 26–19–5 and 34A–2–417." These two sections address the recovery of medical assistance from third parties under the Medical Benefits Recovery Act. Utah Code Ann. §§ 26–19–1 to –196 (1988 and Supp.2006). Because these sections are not at issue in this case, the amended language does not affect our analysis.

5. We note that the legislature has further evidenced this protective attitude by passing the Structured Settlement Protection Act contained in Utah Code sections 78–59–101 to –108 (2002). *See, e.g.,* Utah Code Ann. § 78–59–104 ("Direct or indirect transfer of structured settlement pay-

ment rights may not be effective and a structured settlement obligor or annuity issuer may not be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance in a final court order."). This protective attitude is also reflected in a Utah Labor Commission administrative rule providing "[a]ny entity issuing compensation checks or drafts must make those checks/drafts payable directly to the injured worker and must mail them directly to the last known mailing address of the injured worker." Utah Admin. Code r. 612–1–6(A) (2006).

tled to disability compensation payments from requesting that the Commission send their payments to a trust and then assigning these trust benefits to a creditor.

¶ 11 Our conclusion is bolstered by the case law of states with similar statutes. Although many states have chosen to specifically prohibit the assignment of compensation benefits,[6] Utah is one of a few states that does not. *See also* N.M. Stat. § 52–1–52A (2003) ("Compensation benefits shall be exempt from claims of creditors and from any attachment, garnishment or execution and shall be paid only to such worker or his personal representative."); Ohio Rev.Code Ann. § 4123.67 (2001) ("[C]ompensation before payment shall be exempt from all claims of creditors and from any attachment or execution, and shall be paid only to the employees or their dependents."). Courts in states with similar statutes have upheld the assignment of compensation benefits based on the absence of statutory language specifically prohibiting assignments. *See, e.g., Romero v. Earl*, 111 N.M. 789, 810 P.2d 808, 811 (1991) (holding that an injured worker's assignment of compensation proceeds to a doctor was enforceable because the New Mexico statute did not specifically address assignments). Similarly, section 422 prohibits the attachment and execution of compensation benefits but does not specifically prohibit assignments. We therefore decline to read a prohibition of assignments into section 422 when the plain language and apparent purpose indicates that the legislature did not intend to include such a prohibition.[7] Accordingly, our holding with respect to the first issue on certiorari is that Williams was free to request that the Commission send his disability compensation payments to the Trust and to assign his beneficial interest in the Trust to Florida Asset.

■ ¶ 12 Implicit in our holding on the first issue is the plain language of section 422 which requires that the Commission pay disability compensation benefits "only to employees." Utah Code Ann. § 34A–2–422. This language likewise governs our holding on the second issue, whether Florida Asset can compel the Commission to continue sending Williams' disability compensation to the Trust. While the Commission may send an employee's benefit payments to a trust when so directed by the employee, it does not follow that the Commission can be forced to send payments to a trust *against* the wishes of the employee. Such a result would be counter to the plain meaning and purpose of section 422. It would effectively allow third-party creditors to circumvent the statute, thereby receiving disability compensation payments intended for the employee before they are paid to the employee.[8] Moreover, the plain language of section 422 places only one responsibility on the Commission: to pay the employee. The result that Florida Asset seeks is clearly outside the Commission's powers.[9] Thus, we agree with the court of appeals that the Commission must direct the compensation payments according to the employee's directions because

---

6. *See, e.g.,* Ariz.Rev.Stat. Ann. § 23–1068 (Supp. 2005) ("Compensation, whether determined or not, is not, prior to the delivery of the warrant therefor, assignable."); Cal. Lab.Code § 4900 (West 2003) ("No claim for compensation . . . is assignable before payment. . . ."); Fla. Stat. Ann. § 440.22 (West 2005) ("No assignment, release, or commutation of compensation or benefits due or payable . . . shall be valid. . . ."); Ky.Rev.Stat. Ann. § 342.180 (LexisNexis 2005) ("No claim for compensation under this chapter shall be assignable. . . ."); Nev.Rev.Stat. § 616C.205 (2000) ("[C]ompensation payable or paid . . . whether determined or due, or not, is not, before the issuance and delivery of the check, assignable. . . .").

7. Of course, if the Utah Legislature wishes to prohibit arrangements such as that at issue here,

an amendment to the statutes could easily accomplish that purpose.

8. Florida Asset contends that paying the Trust is equivalent to paying Williams because Williams voluntarily signed the irrevocable letter of direction. However, according to the plain language of the statute, paying the Trust is not paying Williams if Williams, the sole person to whom the Commission owes a statutory obligation, directs otherwise.

9. "No outside agreement or even court order can give a compensation board power to order payment of [workers' compensation] benefits to anyone but the persons specified in the statute." 4 *Larson's Workers' Compensation Law* § 89.07 (2005).

[a]ny other result places the Commission in an untenable position of trying to determine the validity of an assignment or agreement made by the worker, and forces the Commission to discern the legitimacy of a third party's claim to the benefits. This is contrary to the plain language of section 34A–2–422 and the public policy embodied therein.

*Fla. Asset,* 2004 UT App 273, ¶ 23, 98 P.3d 436. Therefore, it is clear that a creditor cannot compel the Commission to direct an employee's disability compensation payments to a trust for subsequent transfer to the creditor; the Commission's only statutory obligation is to the employee entitled to payment.

¶ 13 In summary, we hold that section 422 does not prohibit Williams from requesting that the Commission send his disability compensation payments to the Trust, even if he has chosen to assign his beneficial interest in the Trust to a creditor like Florida Asset. Such an arrangement does not violate the plain meaning or purpose of section 422; the Commission is, in effect, still paying Williams, and Florida Asset is receiving the funds only *after* payment to Williams. However, the Commission cannot be forced to continue paying the Trust if Williams has asked to be paid otherwise since the Commission's only statutory obligation is to pay Williams. Accordingly, Florida Asset cannot enforce its arrangement with Williams against the Commission.

¶ 14 Of course, Florida Asset is not without recourse in this matter. The proper remedy for an aggrieved assignee or creditor is to bring suit against the defaulting assignor or employee rather than against the Commission. If Williams has breached an assignment contract with Florida Asset, Florida Asset has a contract remedy against Williams; however, this is in no way relevant to the Commission's statutory obligation.

Further, if there is a court order directing Williams to have his payments sent to Florida Asset, Williams runs the risks attendant upon noncompliance. Nevertheless, the Commission cannot be bound to do anything other than what the statute requires, which is to send the payments according to Williams' directions. The Commission has no contractual relationship with Florida Asset, and thus Florida Asset has no recourse against the Commission. We therefore uphold the decision of the court of appeals that the proper remedy in this case is for Florida Asset to enforce its several judgments against Williams directly. *Id.* ¶ 24.

## CONCLUSION

¶ 15 Utah Code section 34A–2–422 is clear and unambiguous on its face; it requires the Commission to pay Williams' disability benefits to him. Williams was free to direct the Commission to pay him by paying the Trust. However, the Commission was statutorily obligated to stop paying the Trust and send Williams' payments directly to him when he requested it to do so. Accordingly, Florida Asset's only remedy is to enforce its contractual rights and court judgments against Williams directly. The decision of the court of appeals is affirmed.

¶ 16 Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Chief Justice DURHAM'S opinion.

NEHRING, Justice, dissenting:

¶ 17 I agree with half of the majority's opinion. Section 34A–2–422 of the Utah Code (2005) (section 422) permits Mr. Williams to direct payments from the labor commission to his trust. I disagree, however, with its ultimate conclusion that section 422 forbids employees, like Mr. Williams, to give up the right to change their minds about the direction of their payments.[1] I find noth-

---

1. I understand that the majority opinion does not explicitly say that an employee cannot direct funds in perpetuity through an irrevocable letter of direction. Rather, it concludes that a third-party beneficiary cannot enforce such a letter. This distinction is functionally irrelevant because the practical effect of forbidding the beneficiary of an irrevocable letter of direction to enforce

that agreement is identical to not allowing the employee to bind himself. Either way, the beneficiary loses its benefit. This is so because were we to conclude, as I believe we should, that such an irrevocable letter would be valid and enforceable, the labor commission would presumably honor it, and any dispute would necessarily arise

ing in the language of section 422 that suggests that an employee's control of payments should be restricted in this way.

¶ 18 The majority reasons that section 422 allows an employee to direct payments to a trust because the decision to do so is a manifestation of the employee's right to "control" the disposition of payments. I am not persuaded, however, that section 422 bars employees from exercising their control over the direction of payments to a trust in the form of an irrevocable decision. A persuasive analytical rationale for prohibiting an employee from making an irrevocable choice to direct payments to a trust might be crafted, but not with the concept of employee "control" at its core.

¶ 19 The conceptual flaw in the majority analysis is exposed in one key sentence of the opinion. In it, the majority proposes that "[w]hile the Commission may send an employee's benefit payments to a trust when so directed by the employee, it does not follow that the Commission can be forced to send payments to a trust *against* the wishes of the employee." *Supra* ¶ 12 (emphasis in original). I have no quarrel with this proposition as an abstraction. It is, however, a proposition of dubious application to this case. This is so because its conclusion—that the Commission cannot be forced to direct payments against the wishes of Mr. Williams—is wholly dependent on the unproven assumption that Mr. Williams' wishes were not conclusively expressed in his Irrevocable Letter of Direction. Were the Commission to act against Mr. Williams' wishes, it would deny him the control over the direction of his proceeds guaranteed by section 422. Left unanswered in the majority's analysis is the question of why Mr. Williams' execution of the Irrevocable Letter of Direction is a lesser manifestation of his right to control the direction of proceeds than his later renunciation of the Letter. If a satisfactory answer to this question exists, I do not believe it can be found in the plain language of section 422.

¶ 20 An important aspect of control is the ability to bind oneself. If, at the time a continuous future stream of compensation is guaranteed to the employee, he is told that

between the employee and the commission or the

he is free to direct the payments as he sees fit, but that he cannot do so irrevocably, then the employee's beneficial use and control has been restricted. There may be good reasons why the legislature may wish to limit an employee's choices concerning the post-receipt disposition of compensation proceeds. The protections afforded periodic payments in the Structured Settlement Protection Act, Utah Code Ann. §§ 78–59–101 to –108 (2002), is one example of how additional safeguards against creditors can be accomplished. Such restrictions on the employee's range of choices concerning the fate of compensation proceeds should, in my view, actually appear in unambiguous statutory language. Try as I might, I am unable to discover them in section 422.

employee and the third-party beneficiary.