2011 UT App 147

**STAMPIN' UP, INC. and Workers' Compensation Fund, Petitioners,**

v.

**LABOR COMMISSION and Jessie C. Gonzalez, Respondents.**

No. 20100122–CA.

Court of Appeals of Utah.

May 12, 2011.

Petition for Writ of Certiorari Denied Aug. 31, 2011.

Floyd W. Holm, Sandy, for Petitioners.

Alan L. Hennebold and William T. Barlow, Salt Lake City, for Respondents.

Before Judges DAVIS, ORME, and THORNE.

## OPINION

ORME, Judge:

¶ 1 Petitioners Stampin' Up, Inc. (the employer) and Workers' Compensation Fund (WCF) seek review of the Utah Labor Commission Appeals Board's order affirming an administrative law judge's decision to award temporary disability benefits to Jessie C. Gonzalez during periods when he was unable to perform light duty work for the employer because he no longer worked for the employer. We uphold the Board's decision.

## BACKGROUND

¶ 2 Gonzalez injured his shoulder in an industrial accident on January 20, 2006. WCF promptly commenced paying temporary disability benefits on the employer's behalf. By January 26, Gonzalez's treating doctor had released him to light-duty work. The employer provided light-duty work and Gonzalez returned to work at full pay the same day. Gonzalez continued to perform light-duty work until his employer terminated his employment on April 12, 2006,[1] for sending pornographic images to other employees' cell phones and on company email accounts. WCF did not resume paying temporary disability benefits on that date on the ground that light-duty work remained available pursuant to Utah Code section 34A–2–410(2), *see* Utah Code Ann. § 34A–2–410(2) (Supp.2010),[2] but "Gonzalez had constructive-

---

1. Gonzalez's employment was actually terminated on April 13, 2006. However, he had obtained an extension of his release for light-duty work the day before and had not recommenced work under that extension.

2. As a convenience to the reader, and because the provisions in effect at the relevant time do

ly rejected it because of his bad acts resulting in the termination."

¶ 3 Gonzalez's light-duty work release continued until May 10, 2006, when he underwent surgery on his shoulder. At that time, he was no longer able to perform even light-duty work and WCF resumed paying temporary disability benefits. On August 29, 2006, Gonzalez's doctor released him to light-duty work, and WCF again stopped paying benefits. Finally, on October 17, 2006, Gonzalez's doctor released him to full-duty work without restrictions.

¶ 4 In January 2007, an administrative law judge held a hearing regarding whether Gonzalez was entitled to benefits for the periods of April 12 to May 9, 2006, and August 29 to October 16, 2006, when he had been released to light-duty work but was unable to perform it because of his termination. The ALJ subsequently ruled in favor of Gonzalez and ordered Petitioners to pay him benefits for the disputed weeks.

¶ 5 In reaching this decision, the ALJ relied in part on the decision in *King v. Industrial Commission*, 850 P.2d 1281 (Utah Ct. App.1993), in which the Industrial Commission denied benefits on the ground that an injured employee's incarceration, rather than a lack of light-duty work, had prevented the employee from returning to work. *See id.* at 1292. This court rejected that argument, holding that the employee was entitled to benefits during his incarceration. *See id.* at 1295. The ALJ also relied on a 2006 Labor Commission decision that stated as follows:

> [A]n injured worker can[not] escape his or her duty to accept suitable light duty work simply by engaging in misconduct that he or she knows will result in termination. If an injured worker on light duty assignment intentionally engages in misconduct with the purpose of severing the employment relationship, such misconduct should be viewed as a refusal of light duty work. In such cases, the injured worker's constructive refusal of suitable light duty work will terminate the injured worker's right to continuing temporary total disability benefits.

Relying on *King* and the Labor Commission decision, the ALJ rejected Petitioners' argument that because Gonzalez's conduct led to his termination, Gonzalez had constructively refused the light-duty work offered by his employer. Instead, the ALJ concluded that Gonzalez did not intentionally engage in misconduct with the purpose of severing the employment relationship; therefore, he was entitled to temporary disability benefits.

¶ 6 In January 2010, the Appeals Board concluded that there was no evidence that Gonzalez intended to sever his employment relationship and he did not otherwise refuse light-duty work. Accordingly, the Board affirmed the ALJ's decision that Gonzalez was entitled to benefits during the periods following his termination while he was released to light-duty work but unable to perform it because he was no longer working for the employer.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Petitioners do not contend that Gonzalez engaged in misconduct with the purpose or intention of getting fired. Rather, they challenge the Board's affirmance of the ALJ's decision by arguing that the ALJ improperly construed Utah Code section 34A–2–410(2), *see* Utah Code Ann. § 34A–2–410(2) (Supp.2010), when she awarded Gonzalez temporary disability benefits for the contested periods without giving Petitioners an opportunity to prove that Gonzalez was terminated for good cause. A challenge to statutory construction raises a question of law that we review for correctness. *See Esquivel v. Labor Comm'n*, 2000 UT 66, ¶ 13, 7 P.3d 777. We interpret a statute according to its plain language unless such a reading is "unreasonably confused, inoperable, [or] in blatant contradiction to the express purpose of the statute." *West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982). *See Florida Asset Fin. Corp. v. Utah Labor Comm'n*, 2006 UT 58, ¶ 9, 147 P.3d 1189 ("Under our established rules of statutory construction, we look first to the plain meaning of the pertinent language in interpreting [a statute]; only if

not differ materially from the statutory provisions currently in effect, we cite to the most recent statutory codifications throughout this opinion.

the language is ambiguous do we consider other sources for its meaning."); *State v. Burns*, 2000 UT 56, ¶ 25, 4 P.3d 795 ("[O]ur primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain language.... We need look beyond the plain language only if we find some ambiguity.").

## ANALYSIS

¶ 8 The parties agree that Utah Code section 34A–2–410(2) applies. *See* Utah Code Ann. § 34A–2–410(2) (Supp.2010). That section provides as follows:

> If a light duty medical release is obtained before the employee reaches a fixed state of recovery and no light duty employment is available to the employee from the employer, temporary disability benefits shall continue to be paid.

*Id.* The statute does not explicitly address whether an employee is entitled to benefits in a situation where "no light duty employment is available to the employee from the employer" because the employee has been fired for violating company policy.[3] Each party argues, however, that the plain language of the statute supports its position. Petitioners contend that even though the employer terminated Gonzalez's employment, light-duty work remained available to Gonzalez and he "constructively declined" that work as a result of his conduct that led to the termination of his employment. Respondents contend

that, because the employer had terminated Gonzalez's employment, the employer had withdrawn the light-duty work; therefore, light-duty work was no longer "available" to Gonzalez for purposes of the statute, given that he did not constructively decline such work by deliberately getting himself fired.

¶ 9 The parties agree that the case turns on the meaning of the word "available" in the statute and also agree that its meaning is not limited to a narrow, simplistic definition of the word.[4] In practice, the Labor Commission has treated deliberate acts by employees differently depending on the employee's intent. For example, the Commission acknowledges that work is still available in the context of the statute and that an employee will be deemed to have refused it if the employee chooses for some personal reason not to work. In applying the statute in the context of a constructive refusal of work that was "available," the Commission has not required that an employee merely be terminated, or even terminated for cause, but rather it has required that the terminated employee acted deliberately and with the intent to sever his relationship with his employer.[5] Thus, in workers' compensation cases, the Commission draws a line between an employee's deliberate, volitional conduct with the intent to sever an employment relationship and conduct that, while deliberate, lacks the requisite intent to result in termi-

---

3. In 2008, the Legislature promulgated section 34A–2–410.5(2)(a), *see* Utah Code Ann. § 34A–2–410.5(2)(a) (Supp.2010), providing that the Labor Commission may reduce or terminate an employee's disability compensation under some circumstances if an employer has terminated an employee for good cause. However, as the Board noted in its decision, Gonzalez's claim arose prior to the enactment of this provision and must be decided under the law in effect at the time of his injury.

4. At oral argument, counsel for the Labor Commission acknowledged that the Commission has promulgated no regulations that clarify the meaning of the word "available" as used in section 34A–2–410(2). Other state courts have considered similar statutes and come to opposite conclusions. *Compare O'Keefe v. Department of Labor & Indus.*, 126 Wash.App. 760, 109 P.3d 484, 487 (2005) (holding that light-duty work remained "available" to an injured employee

who was fired for disciplinary reasons and, therefore, the employee was not entitled to workers' compensation benefits), *review denied*, 156 Wash.2d 1003, 128 P.3d 1239 (2006), *with Arizona Dep't of Pub. Safety v. Industrial Comm'n*, 176 Ariz. 318, 861 P.2d 603, 608 (1993) (declining to hold that "an employee who loses a post-injury job because of misconduct voluntarily forfeits benefits for a loss of earning capacity").

5. In the 2006 decision earlier referred to, the Labor Commission stated as follows, with our emphasis:

> If an injured worker on light duty assignment *intentionally engages in misconduct with the purpose of severing the employment relationship,* such misconduct should be viewed as a refusal of light duty work. In such cases, the injured worker's constructive refusal of suitable light duty work will terminate the injured worker's right to continuing temporary total disability benefits.

nation. As a result, the Commission considers work to be "available" even when an employee engages in misconduct that results in his termination, as long as the employee lacked the "purpose of severing the employment relationship."

¶ 10 Petitioners concede that the record contains no evidence that Gonzalez acted with an intent to be fired but argue that the employer had good cause to terminate his employment [6] and, therefore, should not be required to pay him workers' compensation benefits. Petitioners ask us to go beyond the plain language of the statute and graft onto workers' compensation law the body of law familiar in the unemployment compensation arena, in which if an employer terminates an employee for "just cause," the employer need not pay unemployment benefits.[7] Applying this framework to workers' compensation law, an employee who was fired for good cause would be considered to have constructively refused available light-duty work and would be ineligible for temporary disability benefits, regardless of whether the employee's conduct was calculated to lead to termination and regardless of whether it was egregious or fairly minor.[8] Thus, importing the "good cause" concept into the statute in question would greatly expand the circumstances in which light-duty work would be considered "available" and constructively rejected, and would correspondingly reduce the situations in which an employee would be entitled to temporary disability benefits. We conclude that the introduction of a good cause element into the issue of whether an employer who fires an employee is still making work "available" to that employee impermissibly expands the meaning of "available" as used in section 34A–2–410(2).

¶ 11 The Labor Commission's interpretation of the statute reasonably draws a line between deliberate conduct by which an employee intends to sever his or her employment relationship and conduct that, while perhaps deliberate, lacks that purpose. As a result, we see no error in the Appeals Board's affirmance of the ALJ's decision to award benefits to Gonzalez for the contested periods. Our decision is further supported by policy considerations, in particular, our duty "to construe the Workers' Compensation Act liberally and in favor of employee coverage when statutory terms reasonably admit of such a construction." *Heaton v. Second Injury Fund*, 796 P.2d 676, 679 (Utah 1990). And it best implements the judgment of our Legislature, which, after all, has seen fit to incorporate the "good cause" notion into the unemployment compensation

---

6. Although Petitioners contend that the employer had good cause to fire Gonzalez, they recognize that the ALJ did not make a finding on this issue. Petitioners therefore ask us to vacate the Board's decision and remand the case to the Labor Commission to determine whether Gonzales was fired for good cause. Petitioners argue that the Board improperly affirmed the ALJ's decision "regardless of whether his termination from modified duty employment was for good cause," but they do not address the situation in which an employer lacks good cause to fire its employee, and in fact state in their brief that the case ultimately turns upon whether the employer had good cause to terminate Gonzalez. While Gonzalez's conduct seems at first blush to be egregious, Petitioners concede that his termination would not be deemed for good cause if, for example, the employer consistently tolerated such conduct by its employees.

7. The Employment Security Act provides as follows:

[A]n individual is ineligible for benefits or for purposes of establishing a waiting period:
    . . . .

(2)(a) For the week in which the claimant was discharged for just cause or for an act or omission in connection with employment, not constituting a crime, which is deliberate, willful, or wanton and adverse to the employer's rightful interest, if so found by the division. . . .

Utah Code Ann. § 35A–4–405(2)(a) (Supp.2010).

8. For example, in unemployment compensation cases, just cause to terminate employment and, as a result, to deny unemployment benefits, has been found where employees did not comply with a company rule prohibiting beards or mustaches, *see Western Dairymen Coop., Inc. v. Board of Review*, 684 P.2d 647 (Utah 1984), or where a grocery checker violated the store's coupon redemption policy, *see Nelson v. Department of Emp't Sec.*, 801 P.2d 158 (Utah Ct.App.1990). Although such behaviors have been determined to constitute just cause for establishing ineligibility for unemployment compensation, we think applying the "good cause" paradigm in the workers' compensation context would impermissibly narrow the circumstances in which an employee is entitled to receive workers' compensation benefits under the applicable statute.

legislative scheme while omitting it, at least until recently, *see supra* note 3, from the provisions applicable to this aspect of workers' compensation.

¶ 12 We acknowledge that the result in this case—paying temporary disability benefits to an employee who would have been able to perform light-duty work but for being terminated for misconduct—may appear counterintuitive. But when an administrative agency consistently interprets a statute in a particular way, if there is to be a change from the resulting practice, the Legislature, not the judiciary, should ordinarily instigate that change. *See King v. Industrial Comm'n*, 850 P.2d 1281, 1296 (Utah Ct.App. 1993) ("The termination of [workers' compensation] benefits is a policy matter which must be addressed by the Utah Legislature, not by this court or by the [Labor Commission].").  Indeed, as we have noted, in 2008, the Legislature recognized a shortcoming in workers' compensation law and sought to resolve it by enacting section 34A–2–410.5(2). *See* Utah Code Ann. § 34A–2–410.5(2) (Supp. 2010) (providing that the Labor Commission may reduce or terminate workers' compensation benefits in some circumstances when an employee has been terminated for good cause).  As we have also noted, however, this provision was enacted after Gonzalez was injured and does not apply to him.

## CONCLUSION

¶ 13 The Appeals Board ruled correctly. We decline to disturb its decision affirming the ALJ's decision to award temporary disability benefits to Gonzalez for the periods from April 12 to May 9, 2006, and August 29 to October 16, 2006.

¶ 14 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and WILLIAM A. THORNE JR., Judge.